**AMERICAN CENTENNIAL INSURANCE COMPANY, Plaintiff,**

v.

**ARMCO INC., Defendant.**

**The BURT SYNDICATE, INC., Plaintiff,**

v.

**ARMCO INC., Defendant.**

**Nos. 89 Civ. 6117 (LMM), 89 Civ. 7068 (LMM).**

United States District Court, S.D. New York.

Sept. 11, 1990.

Eugene Wollan, Mound Cotton & Wollan, New York City, for American Centennial Ins. Co.

Richard E. Hahn, Bickford Hahn & Hayes, New York City, for Burt Syndicate, Inc.

Erskine D. Henderson, Skadden Arps, John M. Nonna, Werner Kennedy & French, New York City, for defendant.

McKENNA, District Judge.

Defendant moves pursuant to Articles III and IV of the United States Constitution and Fed.R.Civ.P. 12(b)(1) for an order dismissing the claims in these actions for

lack of subject matter jurisdiction[1], or alternatively, staying or dismissing these actions on abstention grounds. Defendant's motion requires the Court to resolve a conflict between the fundamental obligation to exercise federal jurisdiction and the unique responsibility of the several states to regulate the pooling of risks.

The Court concludes that it must defer to Ohio's interest in providing for the equitable liquidation of a domestic insurer. Abstention is appropriate so that an Ohio court, rather than a federal forum, can decide and define the comparative rights of an insolvent Ohio insurer, its parent and its creditors. Defendant's motion is granted to this extent only, and otherwise denied.

## BACKGROUND

Defendant Armco Inc. ("Armco") owns the American Druggists' Insurance Co. ("ADI"). ADI allegedly owes plaintiffs American Centennial Insurance Company ("American") and The Burt Syndicate, Inc. ("Burt") more than $2.2 and $1.2 million respectively for its share of outstanding losses on various reinsurance agreements. American and Burt bring declaratory judgment actions to hold Armco liable for these outstanding debts of ADI on the theory that Armco's acts rendered ADI its alter ego. Plaintiffs allege that Armco has abused the corporate privilege by operating and controlling ADI for its own self-interest and profit.

ADI is incorporated under Ohio law as a stock fire insurance company. In April, 1986, ADI was adjudged insolvent and voluntarily placed into liquidation by the Court of Common Pleas of Franklin County, Ohio ("Liquidation Court"). The Liquidation Court appointed and authorized a liquidator, George Fabe ("Liquidator"), Ohio's Superintendent of Insurance, to marshal and distribute ADI's assets and to pursue actions on behalf of ADI and its creditors, policyholders, shareholders and members against any person. Shortly thereafter, creditors of ADI began filing claims with the Liquidator against ADI's assets. Plaintiffs filed claims for the losses at issue in this litigation.

The Liquidator subsequently entered into settlement discussions with Armco and its subsidiaries. The Liquidator sought to obtain a substantial payment by Armco into ADI's estate.

In June, 1986, the Liquidator moved the Liquidation Court to approve a proposed settlement agreement ("Proposal") with Armco. The Proposal sought to release all claims which the Liquidator had authority to bring on his own behalf, and on behalf of ADI, its creditors, policyholders, shareholders and members against Armco, its subsidiaries, and their past and present officers, directors, employees, agents and other representatives ("Armco Group"). In consideration, Armco agreed to accelerate total payment on a $6 million note held by ADI, pay $3.2 million owed to ADI by other Armco subsidiaries, and contribute an additional $1.8 million to ADI's estate. Armco also agreed to transfer all its ADI stock to the Liquidator upon demand. The motion, opposed by various creditors of ADI, was assigned to a referee, Harold Paddock (the "Referee").

The Referee held a hearing on two issues: the authority of the Liquidator to enter into such a settlement, and whether the Liquidation Court should approve the Proposal. The Referee then recommended to the Liquidation Court that the Proposal be disapproved.

In recommending disapproval, the Referee made the following findings of fact and conclusions of law. ADI's total deficit was originally estimated at between $26 million and $48 million. The Liquidator made an initial demand on Armco of $27 million, which Armco rejected. The Ohio Department of Insurance then recomputed

---

1. This Court's jurisdiction is premised on the diverse citizenship of the parties. Plaintiff American Centennial Insurance Company is a corporation organized under the laws of, with its principal place of business in, Delaware. Plaintiff The Burt Syndicate, Inc. is a corpora-tion organized under the laws of, with its principal place of business in, New York. Defendant Armco Inc. is a corporation organized under the laws of Ohio, with its principal place of business in New Jersey, and is licensed to do business in New York.

ADI's deficit at $18 million, which was demanded and rejected. Armco contended that it neither could nor would pay $18 million into the liquidation estate of ADI because of difficult economic times in the oil and steel industries. The Proposal was then reached.

The Referee found that the Liquidator's objective in agreeing to this settlement with Armco was to compensate "class 3 creditors." The Liquidator considered reinsureds, such as plaintiffs, to be "class 4 creditors," for whom "there was only a slight expectation ... [of] some small distribution" from the ADI estate. In deciding whether to sue or accept Armco's " 'take it or leave it' " offer, the Liquidator chose not to risk payment to "class 3 creditors" of ADI.

The Referee was particularly concerned that the "negotiations" with Armco were, in fact, a "one-sided auction," with the Liquidator reducing its demand each time Armco threatened to pay nothing into the ADI estate. The Referee stated, "[w]hile negotiation and agreement must, of course, be mutual to be effective and binding, it seems as if Armco set its own price to walk away from ADI with no further obligation to anyone."

The Referee concluded that a liquidator cannot release a creditor's right against a third party not under the liquidation order, such as the parent of an insolvent insurance company. The Referee noted that the issue was one of first impression. He then concluded that a prima facie case existed that ADI did not have a corporate existence separate from Armco. He stated, "[t]he wheelings and dealings of Armco make it appear that ADI became a mere shell dominated by other companies in the Armco insurance group."

Finally, the Referee presented the Liquidator and Armco with two options. The Referee stated, "[i]f the liquidator is to truly protect the interest of all creditors of ADI, it must either drive a harder bargain than it did regarding Armco's payment into the estate or settle with Armco without destroying the right of ADI creditors to pursue independent claims against a purported wrongdoer, namely Armco." The Referee recommended to the Liquidation Court that it disapprove the Proposal unless the Liquidator corrected one of these two deficiencies.

The Liquidator objected to the Referee's findings and conclusions, but the Liquidation Court overruled these objections. The Liquidation Court agreed with the Referee's findings of fact and conclusions of law, which it adopted in disapproving the Proposal.

The Liquidator and Armco then reached an amended settlement agreement ("Release and Agreement"). Armco's financial contribution to the liquidation estate was to be the same as in the Proposal. However, the Release and Agreement specifically excluded from release "[c]laims of creditors and policyholders of ADI against members of the Armco Group arising from or relating to ADI."

The Liquidator subsequently moved the Liquidation Court for approval of the Release and Agreement. In so doing, the Liquidator, by his counsel James Rishel, stated:

The Liquidator and Armco have focused their discussions upon restructuring the agreement and the language of the release so that any claims which the creditors and the policyholders of ADI might make against members of the Armco Group arising from or relating to ADI are not released by the Liquidator. In essence, the Liquidator and Armco have followed the recommendation of Referee Paddock and the order of this Court in restructuring the settlement.

The Liquidator and Armco have agreed to a restructured settlement whereby only the claims which the Liquidator could pursue in his own right or on behalf of ADI will be released.

The Referee recommended approval of the Release and Agreement, the parties having followed his earlier recommendation. The Referee concluded, "[t]he Release to be executed by the Liquidator in accordance with the terms of the Release and Agreement does not release the alleged claims which the creditors and policy-

holders of ADI might make against members of the Armco Group arising from or relating to ADI."

The Liquidation Court subsequently approved the Release and Agreement, while adopting the Referee's findings and conclusions. Plaintiffs then filed the present actions against Armco. ADI is still in liquidation.

## DISCUSSION

Armco asserts several arguments in support of its motion. The Court's decision requires that only two of the issues raised need discussion: 1) whether, under Ohio law, an alter ego claim is assertable, outside the liquidation proceeding, by a creditor of an insolvent insurer against the insurer's parent; and 2) whether a federal court should abstain from hearing and deciding such a claim.

### Standing

Armco asserts that plaintiffs lack standing because their alter ego claims are the exclusive property of the Liquidator. Armco contends that liquidators will not be able to negotiate settlements, and efficiently and fairly marshal and distribute an insolvent insurer's assets, if creditors, such as plaintiffs, are granted standing to bring alter ego actions outside the liquidation proceedings.

In support of this argument, Armco offers the affidavit of James Rishel, counsel to the Ohio Liquidator, to the effect that the Liquidator had the exclusive right to pursue and to release all veil piercing or alter ego claims against the Armco Group arising from or relating to ADI and that Ohio law vests all such claims in the Liquidator exclusively on behalf of all creditors, members, policyholders and shareholders of ADI. Rishel adds that the Liquidator did not intend, by excluding creditor claims from release, to imply that any creditor or policyholder held, or had the concurrent right to assert, claims which the Liquidator released pursuant to the Release and Agreement.

Armco cites several recent decisions in support of its argument, including a deci-

sion where an insolvent debtor was in federal bankruptcy, *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989) (applying federal bankruptcy code and Ohio law), and decisions where the insolvent debtor was an insurer in a liquidation proceeding: under Illinois law, *Central Nat'l Ins. Co. v. B-W Transmissions,* No. 88 C 928, 1989 WL 44335 (N.D.Ill. April 21, 1989), *reh. denied,* No. 88 C 928, 1990 WL 6830 (N.D.Ill. January 10, 1990), *Hartford Cas. Ins. Co. v. Borg-Warner Corp.,* No. 88 C 783 (N.D.Ill. April 17, 1989), *reh. denied,* No. 88 C 783, 1989 WL 95806 (N.D. Ill. August 11, 1989); and under New York law, *Corcoran v. Frank B. Hall & Co.,* 149 A.D.2d 165, 545 N.Y.S.2d 278 (1st Dep't 1989).

In *St. Paul,* the Second Circuit Court of Appeals held that alter ego claims are the property of the insolvent estate and are not assertable by creditors outside the bankruptcy proceeding. 884 F.2d at 703–05. The court found Ohio law to be silent on this issue. *Id.* at 700–03. It decided that, under Ohio law, an insolvent corporation would be able to assert an alter ego claim against its parent corporation. *Id.* Finally, the court concluded that individual creditors do not have standing to sue the debtor's parent where the monetary recovery would benefit all creditors, unless the trustee has abandoned the claim. *Id.* at 700–05.

*Central Nat'l Ins. Co.* and *Hartford Cas. Ins. Co.* hold that creditors cannot assert an alter ego claim against the parent of an insolvent insurer where the injury for which redress is sought is common to all creditors. The decisions interpret Illinois law as providing that the Illinois Director of Insurance has the sole authority to assert such claims.

In *Frank B. Hall,* defendants had argued that, under New York law, a liquidator has authority to assert only the insolvent insurer's claims, and not the insurer's creditors' claims, except claims for voidable transfers and liens, which the liquidator had explicit statutory authority to assert. 545 N.Y.S.2d at 280. The court rejected defendants' argument. *Id.* The court stat-

ed that the liquidator had "paramount and exclusive" standing to assert claims on behalf of the insolvent insurer, its policyholders and creditors. *Id.* at 281–85. The court later reasoned that it was unnecessary to decide whether the liquidator had exclusive standing to assert creditors' claims, since all of the claims asserted by the liquidator, including an alter ego claim, belonged to the insolvent insurer, for which the liquidator did have exclusive authority. *Id.* at 282–83. The court added that a creditor submits itself to the exclusive jurisdiction of the liquidation court when it files a proof of claim in liquidation. *Id.* at 282.

These decisions do not control this case. They do not include a federal court decision that an alter ego[2] claim is the exclusive property of a liquidator where there is substantial evidence that the liquidation court intended that creditors could assert such a claim. For this reason, and others, these decisions are not persuasive. Furthermore, this Court is only bound by the Second Circuit's decision in *St. Paul*, which does not determine the resolution of the issue before this Court, for the following reasons.

First, *St. Paul* is concerned with the standing of a creditor of a debtor in federal bankruptcy, not in state liquidation. The court considered federal bankruptcy law, as well as Ohio law, in reaching its holding, and rests its decision primarily on the former. 884 F.2d at 707. Only Ohio law is relevant here.

Second, in *St. Paul*, the court made it clear that Ohio law was silent on the issue of whether alter ego claims are the property of the estate. In this case, as discussed below, there is evidence that the Ohio Liquidation Court did not consider alter ego claims to be the sole property of the Liquidator.

Finally, and most important, is the fact that the court in *St. Paul* did not face a question of whether to abstain. The court decided an issue of state law in the context of a federal bankruptcy proceeding. In *St. Paul*, the court was not asked to defer to a state's unique interest in regulating insurance, as this Court is now requested to do.

### Burford Abstention

Armco contends that this court should abstain from exercising jurisdiction in this case, under the *Burford* doctrine[3], so as to avoid disrupting Ohio's regulatory scheme for the liquidation of domestic insurers.

Armco acknowledges that federal courts have a fundamental duty to exercise jurisdiction conferred. *See Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909). This duty is rooted in the constitutional principle that Congress, not the judiciary, defines the jurisdiction of the federal courts, within constitutional bounds. *New Orleans Pub. Serv. v. Council of New Orleans*, ―― U.S. ――, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989). This principle coexists with a federal court's discretion to abstain from deciding certain types of disputes—a discretion founded in the common law background against which Congress conferred jurisdiction.[4] *Id.* Abstention is permissible, however, only in carefully defined areas. *Id.*

Under the *Burford* doctrine, where timely and adequate state court review is available, a federal court must not interfere with state administrative proceedings:

(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state

---

**2.** The Court describes plaintiffs' claims as alter ego claims because it is not certain precisely which veil piercing theories plaintiffs intend to assert against Armco. The Court does not intend to imply that plaintiffs' claims are limited to an alter ego theory.

**3.** The doctrine derives its name from the Supreme Court's decision in *Burford v. Sun Oil*

*Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**4.** *But cf.* Redish, *Abstention, Separation of Powers, and the Limits of the Judicial Function*, 94 Yale L.J. 71 (1984) (Abstention, lacking a basis in legislative history of statutory language, is unacceptable as a matter of legal process and separation of powers).

efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*New Orleans Pub. Serv.,* 109 S.Ct. at 2514 (quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). Federal review of such state questions would lead to needless federal conflict with state policy, misunderstanding of state law, and delay. *Burford v. Sun Oil Co.,* 319 U.S. 315, 327, 63 S.Ct. 1098, 1104, 87 L.Ed. 1424 (1943).

Abstention reflects a "complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1 (1987). Federal courts must respect the rightful independence of state governments to carry out their domestic policy. *Di Giovanni v. Camden Fire Ins. Ass'n,* 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47 (1935). The right of states to administer specialized schemes for liquidating certain business enterprises has long been recognized as a ground for deference by federal courts. *Pennsylvania v. Williams,* 294 U.S. 176, 182–86, 55 S.Ct. 380, 383–85, 79 L.Ed. 841 (1935).

Ohio has adopted a comprehensive regulatory scheme for the rehabilitation and liquidation of insurers. *See* Ohio Rev.Code Ann. §§ 3903.01–.59 (Anderson 1989). Among its provisions, this scheme provides that the liquidator is vested with title to all of the property, contracts and rights of action of the insurer, and may collect all debts, moneys due and claims belonging to the insurer. §§ 3903.18(A), .21(A)(5). The liquidator determines the validity of claims against the estate, and distributes the estate's assets according to a statutory schedule of priorities. §§ 3903.39, .42. Furthermore, this scheme provides that an Ohio court has jurisdiction to hear all authorized liquidation actions. § 3903.04(E).

Ohio's effort to establish a coherent public policy for the liquidation of insolvent insurers is further reflected in the stated statutory purpose for its regulatory scheme. Section 3903.02 provides in part:

(D) The [scheme's] purpose is the protection of the interests of insureds, claimants, creditors, and the public generally, ... through all of the following:

. . . .

(3) Enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation;

(4) Equitable apportionment of any unavoidable loss;

(5) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside the state;

(6) Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

In addition to Ohio's enactment of a comprehensive regulatory scheme, the subject matter of the scheme and of this litigation is well recognized as an area in which states have a special interest. For over seventy-five years, from *Paul v. Virginia,* 8 Wall. 168, 19 L.Ed. 357 (1868), to *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), insurance was widely considered to be outside the scope of the federal commerce power. *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 415, 66 S.Ct. 1142, 1147, 90 L.Ed. 1342 (1946). Congress legislated only as to commerce generally, without specific reference to insurance. *Id.* The states regulated insurance exclusively. *Securities & Exch. Comm'n v. National Sec., Inc.,* 393 U.S. 453, 458, 89 S.Ct. 564, 567, 21 L.Ed.2d 668 (1969). As insurance affected a vast public interest, states developed comprehensive regulatory and taxing systems. *Prudential Ins. Co.,* 328 U.S. at 415–16, 66 S.Ct. at 1147–48.

The states' unique role changed momentarily when insurance was deemed "commerce," and thus subject to the negative implication of the commerce clause, in *South–Eastern Underwriters.* Congress responded immediately, however, to restore state taxing and regulatory powers over

the insurance industry to their prior scope. *Western and S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 655, 101 S.Ct. 2070, 2076, 68 L.Ed.2d 514 (1981). Congress declared that "the continued regulation and taxation by the several states of the business of insurance is in the public interest," as insurance is "a local matter." McCarran–Ferguson Act § 1, 15 U.S.C. § 1011 (1976); H.R.Rep. No. 143, 79th Cong., 1st Sess., 2 (1945)).

Congress' mandate that regulation of the insurance industry be left to the states has prompted federal courts to hesitate before interfering with state regulatory schemes. *Levy v. Lewis*, 635 F.2d 960, 963–64 (2d Cir.1980). Ohio's regulatory scheme for rehabilitating and liquidating insurers demands such deference. *See Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38, 43 (2d Cir.1986) (abstention appropriate where New York scheme for liquidation of insurers at issue), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987); *Superintendent of Ins. v. Baker & Hostetler*, 668 F.Supp. 1054, 1055 (N.D.Ohio) (New York and Ohio have passed very similar versions of the Uniform Insurer's Liquidation Act), *aff'd*, 826 F.2d 1065 (6th Cir. 1987).

This Court's decision to abstain is further supported by the fact that the issues sought to be adjudicated are largely matters of state law. *See Law Enforcement Ins. Co.*, 807 F.2d at 43. As discussed below, the primary questions raised by this motion are more properly addressed by an Ohio court. Furthermore, were this case to proceed beyond this motion, this Court would undoubtedly face additional questions which an Ohio court would be better suited to address.

Above, it is noted that this case presents the state law issue of whether alter ego claims are the exclusive property of the insolvent insurer, and, thus, of the liquidator. The answer to this question will affect the future liquidation of domestic insurers in Ohio in a profound way. Yet,

prior to this case, Ohio courts have not answered this question.[5] In this case, it is not clear from the record whether the Liquidation Court intended to answer this question. And, if the Liquidation Court did so intend, its answer is certainly subject to reasonable dispute. This Court's inability to decipher the Liquidation Court's intent as to this question contributes to its decision to abstain.

### Evidence of the Liquidation Court's Intent

From the record it is clear that the Liquidation Court intended to permit creditors to assert claims against Armco. The Release and Settlement approved by the Liquidation Court specifically excludes from release "[c]laims of creditors and policyholders of ADI against members of the Armco Group arising from or relating to ADI." It is not clear, however, what types of claims were preserved. The Liquidation Court does not explicitly state whether alter ego claims belong to the Liquidator exclusively, or if creditors have a concurrent right to assert alter ego claims against Armco. The language and history of the Release and Agreement provide competing evidence as to this question, as follows.

Throughout the process leading up to the Liquidation Court's approval of the Release and Settlement, alter ego claims against Armco were the primary claims contemplated. In recommending disapproval of the Proposal, the Referee relied on the existence of prima facie evidence of an alter ego claim against Armco. The Referee stated:

> After extensive thought, the Referee concludes that the Superintendent [of Insurance] cannot under the statute as written take away the right of a creditor of a defunct insurance company to sue a third party not under the liquidation order for financial wrongs done to the creditor. The wheelings and dealings of Armco make it appear that ADI became a mere shell dominated by other compa-

---

**5.** As discussed above, the Second Circuit has addressed this question, but in the context of federal bankruptcy proceedings rather than state insolvency proceedings, and not where

there was evidence that an Ohio Court believed that the liquidator did not have sole authority to assert alter ego claims. *See St. Paul*, 884 F.2d 703–05.

nies in the Armco insurance group. At least a prima facie case can be made out that ADI had no separate existence.

Faced with prima facie evidence in support of an alter ego claim, the Referee then concluded that the Liquidation Court should reject the Proposal unless: 1) Armco made a greater financial contribution into ADI's estate, or 2) creditors' claims were not released. The Liquidation Court subsequently adopted the Referee's findings and conclusions in disapproving the Proposal.[6] Armco and the Liquidator then entered into the Release and Settlement, which the Liquidation Court approved. In requesting approval of the Release and Settlement, the Liquidator informed the Liquidation Court that the Referee's recommendation for amending the prior agreement had been followed. The Referee agreed that the Release and Agreement complied with his recommendation.

Armco did not choose the first option recommended by the Referee, that it pay more money into the estate. Rather, the Release and Agreement excludes from release "the alleged claims which the creditors and policyholders of ADI might make against members of the Armco Group arising from or relating to ADI."

After its prior disapproval of the Proposal based on the conclusion that there was prima facie evidence in support of alter ego claims against Armco, it is hardly reasonable to think that the Liquidation Court intended to release creditors' alter ego claims even though Armco refused to make a greater financial contribution into the liquidation estate. In directing Armco to either make a greater financial contribution into the estate, or defend against creditor claims, the Liquidation Court relied on the evidence that Armco dominated and manipulated ADI—the heart of an alter ego claim.

Armco argues that the Liquidation Court intended to exclude from release only claims based on guarantee, suretyship, or particularized fraud, misrepresentation or estoppel. The Court does not find this argument convincing. Armco does not point to a single instance in the history of the negotiation and approval of the Release and Agreement where such claims were referred to. Thus, it is less than compelling to reason that the Liquidation Court had only such claims in mind when it approved an agreement premised on the preservation of creditors' claims. More importantly, the Release and Agreement does not, in any way, limit the creditors' claims which can be asserted against Armco with respect to ADI. The Liquidator, in moving the Liquidation Court to approve the Release and Agreement, stated:

> [t]he Liquidator and Armco have focused their discussions upon restructuring the agreement and the language of the release so that *any claims* which the creditors and the policyholders of ADI might make against members of the Armco Group arising from or relating to ADI are not released by the Liquidator. (emphasis added).

Obviously, this quoted language does not defeat Armco's position *if* the Liquidation Court considered alter ego claims to be the exclusive property of the Liquidator, but the Liquidation Court did not explicitly express such a view. Initially, in disapproving the Proposal, the Liquidation Court adopted the view that creditors' alter ego claims were not the exclusive property of the Liquidator, and thus could not be released by the Liquidator in settlement. And, as stated above, it appears that the choice presented to Armco was either to make a greater financial contribution to the estate or to defend against creditors' alter ego claims. Without compelling evidence to the contrary, the Court is hesitant to say that the Liquidation Court changed its view on this issue. The Liquidation Court could have subsequently declared that it had changed its view, and that creditors could not assert alter ego claims against Armco, but it did not do so.

---

**6.** Contrary to Armco's assertion, this order of disapproval, though vacated, is probative of the Liquidation Court's position as to which claims were subsequently preserved for creditors to assert against Armco.

Armco cannot argue that the Liquidation Court, by releasing the claims of ADI but not creditors, intended to release all alter ego claims on the ground that the decisions referred to above, such as *St. Paul*, make such claims the exclusive property of ADI. These cases were decided after the Liquidation Court approved the Release and Agreement. At the time the Liquidation Court made its decision, the reported decisions addressing this issue had reached differing conclusions. *See St. Paul*, 884 F.2d 688, 696. For example, in *In re S.I. Acquisition*, 817 F.2d 1142, 1153 (5th Cir.1987), the Fifth Circuit had held that, under Texas law, an alter ego claim is the property of the bankrupt debtor. In contrast, in *In re Ozark Restaurant Equip. Co.*, 816 F.2d 1222, 1225–26 (8th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987), the Eighth Circuit had held that, under Arkansas law, veil piercing claims are the property of creditors, not the debtor corporation, so that a bankruptcy trustee did not have standing to bring an alter ego action on behalf of creditors. 816 F.2d at 1225. Similarly, in *In re D.H. Overmyer Telecasting Co.*, 56 B.R. 657, 659 (Bankr.N. D.Ohio 1986), the court stated that "[i]t is well settled that a trustee ... lacks standing to assert the claims of creditors against third parties who are alleged to bear responsibility for a debtor's losses." These differing decisions suggest that reasonable minds can and do differ as to whether the public interest is served by permitting a liquidator the exclusive right to assert alter ego claims. Against this background, the Court would be remiss were it not sensitive to the competing evidence as to the Liquidation Court's view on this question.[7]

On the other hand, there is some evidence in support of Armco's contention that the Liquidation Court approved release of all alter ego claims against Armco. The Release and Agreement, as approved, states, "the Liquidator has fully and thoroughly investigated the possible claims *he and ADI* could assert against members of the Armco Group, including, but not limited to, claims that members of the Armco Group should be treated as the alter ego of ADI and claims that Armco or members of the Armco Group illegally, improperly, and/or fraudulently controlled, supervised, or conducted the affairs of ADI" (emphasis added). Thus, the Liquidator certainly had authority to assert or settle alter ego claims—but did he have exclusive authority? The Liquidator's counsel now says so,[8] but the orders of the Liquidation Court are not so clear. As discussed above, the initial conclusions adopted by the Liquidation Court state that the Liquidator cannot deprive a creditor of the right to assert claims against a third party not under the liquidation order, such as Armco. These conclusions also suggest that it was alter ego claims of which creditors could not be deprived. In contrast, the Liquidation Court's order approving the Release and Agreement adopts the Referee's conclusion that Ohio law "vests the Liquidator with the sole discretion to settle the alleged claims which he proposes to settle with the Armco Group." This order does not specifically state that the Liquidator has sole discretion to assert all alter ego claims which could be asserted against Armco. This language begs the question in the same way that the provision preserving creditors' claims does. Creditors' claims were preserved, and the Liquidator had sole discretion to settle certain claims, but did the Liquidation Court consider alter ego claims to be the exclusive property of the Liquidator?

---

7. Further support for the Court's view that it should not hastily conclude that the Liquidation Court considered alter ego claims to be the exclusive property of ADI lies in the principle that veil piercing claims generally cannot be asserted by the corporation whose veil is sought to be pierced. *Musico v. Champion Credit Corp.*, 764 F.2d 102, 108 (2d Cir.1985). Normally, only third parties can assert such claims.

8. The probative value of the Rishel affidavit is further diluted by the testimony given by Mr. Michael Motil, Deputy Liquidator of Insurance for the State of Ohio, in a similar case, which appears to support the view that creditors can assert alter ego actions against Armco. The Court finds the views of neither to be particularly persuasive in light of the language and history of the Release and Agreement.

This Court cannot conclude that the Liquidator had "sole discretion" to release all alter ego claims that could be asserted against Armco given the strong evidence to the contrary, as detailed above. This Court cannot ignore Armco's failure to follow the recommendation approved by the Liquidation Court that it make a greater financial contribution into the liquidation estate if it wished to be released from creditors' claims that it operated ADI as a "mere shell." This Court is reluctant to conclude that the Liquidation Court, after scolding Armco for "set[ting] its own price to walk away from ADI with no further obligation to anyone," would allow Armco to do just that.

The competing evidence as to whether the Liquidation Court intended to permit creditors to bring alter ego claims against Armco affects the Court's decision in two ways. First, it precludes this Court from concluding with any certainty that an Ohio Court would hold that, as a matter of law, alter ego claims are the exclusive property of the Liquidator. Second, it discourages this Court from ruling whether, in this case, the Liquidation Court intended that plaintiffs could assert alter ego claims against Armco. The first question's substantial impact on future insolvencies of insurance companies, combined with the effect of this second question on the ADI liquidation, demand that this Court abstain in this case.[9] The policy at the root of *Burford* abstention is that questions such as these, with their major implications for proceedings involving the public policy of a state, are better left to the state concerned.

In reaching and expressing this decision, this Court might have said that it could conclude what the Liquidation Court intended, and then presented the evidence accordingly. Yet, the Court need not pretend that it has the power to know what, in point of fact, was in the mind of the Liquidation Court. There is a simple alternative to remedy its lack of such power—to let the Liquidation Court announce what it intended.

This Court's decision to abstain is supported by the Second Circuit's decisions in *Law Enforcement Ins. Co.* and *Levy*. In both cases, the Second Circuit abstained where creditors instituted actions against an insolvent insurer outside the liquidation proceedings. 807 F.2d at 43–44; 635 F.2d at 963–64. Each time, the Second Circuit directed the district court to defer to the state's interest in administering its regulatory scheme for the liquidation of insurers. *Id.* The Second Circuit's decision in *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295 (2d Cir.1990) (request to abstain denied), is not to the contrary. In this case, in contrast to *County of Suffolk,* state issues predominate, the position of the state of Ohio on this issue is not clear, and plaintiffs have not shown that identical remedies are not available in the state and federal forums. *Id.* at 1309; *see also supra* note 8.

In this case, it is the insurer's parent rather than the insurer who is sued. Yet, this distinction does not support deviation from the principles commanding abstention. Regardless of whether the insolvent insurer or the parent is sued, the Court must still defer to a state's unique interest in administering its regulatory scheme for the liquidation of domestic insurers. Furthermore, it is appropriate that an Ohio Court decide whether Ohio law vests the exclusive right to assert alter ego claims in the liquidator. The resolution of this issue will not only substantially affect the liquidation of insolvent insurers, but may also have a substantial impact on whether and how insurance companies do business in Ohio in the years ahead. It is also preferable that this Court not decide the Liquidation Court's intentions as to this issue since the evidence is inconclusive. Finally, suits by creditors of an insolvent insurer against the insurer's parent are directly related to the ADI liquidation proceeding. Such suits bear on the fair distribution of ADI's assets, as these assets may have been improperly acquired by Armco. If a

---

**9.** The Court's decision to abstain makes discussion of plaintiff Burt's intentional interference with contract claim unnecessary.

**360**

parent corporation manipulates the assets of an insurer subsidiary, such that the insurer is a "mere shell," it may be that no action is more important to the fair liquidation of that insurer than an alter ego action against the parent. Thus, if a state is to provide for a fair liquidation, as is Ohio's policy, it should have the opportunity to hear and decide such alter ego claims.

If creditors' alter ego claims are to be asserted, they should be heard and decided by a single court fully informed as to the liquidation proceedings. As the court in *Levy* stated, "experience ... evidences the importance of consolidating all of the assets of an insolvent company and gathering all those who have claims against those assets in a single forum." 635 F.2d at 964. Were more than one court to hear the alter ego claims of ADI's creditors, conflicting decisions could result, and one creditor might obtain preferential rights to ADI's assets. Obviously, such a situation would not contribute to the orderly and equitable settlement of creditors' claims consistent with Ohio's statutory priorities. That creditors' claims should be heard by one court is supported by the stated statutory purposes of Ohio's regulatory scheme, as set forth above, as well as by the order placing ADI in liquidation, which states that the Court of Common Pleas, Franklin County, Ohio, "shall retain jurisdiction in this case for the purpose of granting such other and further relief as the nature of this case or the interests of the policyholders, creditors, stockholders or members of the public may require." Finally, to fairly distribute ADI's assets in the liquidation proceedings, the Liquidation Court must be fully informed as to the resolution of creditors' claims against Armco if they are to occur outside the liquidation proceeding itself.

Whether plaintiffs are to be permitted to assert their claims in the Ohio liquidation proceeding, by adding Armco as a party, or in an Ohio court outside the liquidation proceeding, will, of course, be for an Ohio court to decide.

## CONCLUSION

For the reasons stated above, defendant's motion that the Court abstain from exercising jurisdiction is granted. The motion is otherwise denied. Plaintiffs' claims are dismissed, without prejudice to such subsequent actions or proceedings as an Ohio court shall permit.