**In re AGWAY, INC., Debtor.**

**In re Agway General Agency, Inc., Debtor.**

**In re Brubaker Agronomic Consulting Service LLC, Debtor.**

**In re Country Best Adams, LLC, Debtor.**

**In re Country Best–Deberry LLC, Debtor.**

**In re Feed Commodities International LLC, Debtor.**

**Nos. 02–65872 to 02–65877.**

United States Bankruptcy Court, N.D. New York.

Dec. 15, 2006.

Obermayer Rebmann Maxwell & Hippel, LLP, Deirdre M. Richards, Lawrence J. Tabas, of counsel, Philadelphia, PA, for Reliance Insurance Company.

Menter, Rudin & Trivelpiece, P.C., Jeffrey A. Dove, of counsel, Syracuse, NY, for Debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Before this Court is a motion filed by Reliance Insurance Company (In Liquidation) and its Statutory Liquidator (collectively, "Reliance")[1] on March 23, 2006, seeking an "Order that this Court Lacks Jurisdiction over Reliance's Claim against Agway, Inc., General Agency, Inc., Brubaker Agronomic Consulting Service LLC, Country Best Adams, LC, and Feed Commodities International LLC ('Agway' or the 'Debtors'), or, in the alternative, that this Court Abstain from Hearing the Liquidating Trustee's Motion for an Order Expunging Claim # 4179 filed by Reliance." The Liquidating Trustee filed its objection to Reliance's motion on April 27, 2006.

The Court heard the motion at its regular motion term in Utica, New York on July 20, 2006. Upon conclusion of the July

---

1. In May of 2001, Reliance was placed into "statutory rehabilitation" by the Commonwealth Court of Pennsylvania, pursuant to the Pennsylvania Insurance Rehabilitation/Liquidation Scheme as contained in Article V of the Insurance Department Act of 1921, P.L. 789, 40 Pa. Stat. Ann. §§ 221.1–221.63 (2005) (the "Pennsylvania Insurance Law"). Under the Rehabilitation Order issued by the Commonwealth Court, M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, was appointed as rehabilitator of Reliance. The May 2001 Order placing Reliance into rehabilitation was followed by the October 3, 2001 Order of Liquidation from the same court, finding Reliance to be insolvent, terminating its rehabilitation, and placing Reliance in liquidation status.

20th hearing, the Court indicated that it would take the matter under submission without the need for further briefing.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a),(b)(1), (b)(2)(A), (B), and (O).

## FACTS

Agway, headquartered in DeWitt, New York, was founded as an agricultural cooperative in 1964. On October 1, 2002, Agway filed for bankruptcy protection pursuant to chapter 11 of the Unites States Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). In an Order dated March 6, 2003, the Court established May 30, 2003 as the last day on which creditors could file proofs of claim in this case. On May 30, 2003, Reliance filed an allegedly partially-secured proof of claim (no. 4179) against the Debtors in the amount of $20,704,546. The Agway Liquidating Trust was established by this Court's Order, dated April 28, 2004, which also confirmed the Debtors' Second Amended Joint Plan of Liquidation, and appointed D. Clark Ogle as Liquidating Trustee ("LT").

On August 24, 2004, the LT filed its motion for an order expunging Reliance's claim, maintaining that Reliance was oversecured to the extent of $11,010,541.50, and that Reliance had no basis for an unsecured claim against Agway.[2] On

March 23, 2006, Reliance filed the motion currently before this Court, and the LT filed its opposition thereto on April 27, 2006.

Both parties appear to agree that Reliance provided insurance coverage to the Debtors between June 30, 1996 and June 30, 2000 for workers compensation, liability, primary casualty and property. Each of the policies issued by Reliance to Agway contained a $1 million deductible provision. For any claims that Reliance paid within or below the $1 million deductible amount, as well as any unpaid premiums and other expenses, Reliance would draw down upon various letters of credit and surety bonds Agway provided as security to Reliance for that purpose. On its proof of claim (no. 4179), Reliance listed property with a value of $18,319,481.00 available to secure its $20,704,546.00 claim. *See* LT's objection to Reliance's motion, Ex. "A".

## ARGUMENTS

### A. *Reliance*

Reliance asserts that pursuant to 15 U.S.C. §§ 1011–1015 (2006) (known as the "McCarran–Ferguson Act"), the Pennsylvania Insurance Law reverse-preempts section 502 of the Code and 28 U.S.C. § 157, thus depriving this Court of jurisdiction to rule on the LT's motion to expunge Reliance's claim against the Debtors.[3]

---

**2.** At the same time the LT filed several motions to fix or expunge the claims of several insurers which had issued policies to Agway before and after Reliance, including Travelers Indemnity Company, National Union Fire Insurance Company of Pittsburgh, and ACE American Insurance Company.

**3.** The McCarran Ferguson Act was enacted to ensure that individual states, rather than the federal government, retained the authority to

regulate the insurance industry. It provides, in relevant part, that "[n] o Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

Reliance argues that, following the four-part test set out in *In re Rubin,* 160 B.R. 269, 279 (Bankr.S.D.N.Y.1993), a federal statute will be reverse-preempted by a state insurance law (in this case the Pennsylvania Insurance Law) pursuant to the McCarran–Ferguson Act, if (a) the federal statute does not specifically relate to the business of insurance, (b) the state law was enacted for the purpose of regulating insurance activities, (c) the activities which brought about the cause of action are the "business of insurance," and (d) application of the federal statute would impair or supersede the state law regulating insurance. Each of these criteria must be met in order for the federal statute to be precluded, or reverse-preempted, by a state insurance law pursuant to the McCarran–Ferguson Act. *See Id.*

Reliance argues that the four-part McCarran–Ferguson Act test is met here, and the Pennsylvania Insurance Law reverse-preempts or precludes the federal law in this case because (a) the Code does not specifically relate to the business of insurance, (b) the Pennsylvania Insurance Law was enacted for the purpose of regulating insurance activities, (c) Reliance's claim is based upon Agway's failure to perform on its insurance contract with Reliance. It asserts that failure to perform on an insurance contract is the business of insurance and, hence, the activities which brought about the cause of action are the business of insurance, and (d) that application of Code § 502 and 28 U.S.C. § 157, which mandate jurisdiction in this Court, would impair the Pennsylvania Insurance Law, which confers jurisdiction over the claim in the Pennsylvania Court.

Reliance also maintains that the doctrine of "first assuming jurisdiction," as set out in *Penn General Casualty Co. v. Pennsylvania ex rel. Schnader,* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935), dictates that the Pennsylvania Commonwealth Court has jurisdiction in this matter. In *Penn General Casualty Co.,* the Supreme Court held that "to protect the judicial process of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* at 195, 55 S.Ct. 386.

In October 2001, prior to Agway's Chapter 11 petition, the Commonwealth Court of Pennsylvania first assumed jurisdiction over this matter by terminating Reliance's statutory rehabilitation, and placing it into liquidation. The Commonwealth Court also appointed Ms. Koken as liquidator, asserted *in rem* jurisdiction over all assets of Reliance, and imposed exclusive jurisdiction over all determinations of the validity and amount of claims against Reliance. *See* ¶ 5, Order of Liquidation, October 3, 2001, Commonwealth Court of Pennsylvania, Reliance Mem. of Law, Ex. "B." Reliance maintains that the Pennsylvania court's assertion of jurisdiction in the Reliance Order of Liquidation mandates that this Court yield to the Pennsylvania court's jurisdiction pursuant to the doctrine of "first assuming jurisdiction" as set forth in *Penn General Casualty Co.*

Reliance also argues that "when it has appeared before this Court, Reliance has always contended that this Court does not have jurisdiction over the claim" and that it only filed its claim in order to fulfill its "fiduciary obligations and responsibility in the face of a bar date." Reliance Mem. of Law, ¶ 41.

In the alternative, Reliance argues that even if this Court has jurisdiction over the claim, it should abstain from ruling on the LT's motion. Under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), abstention is proper when it

would avoid "delay, misunderstanding of local law, and needless federal conflict with the state policy ..." *Id.* at 327, 63 S.Ct. 1098.

Under the *Burford* doctrine, where timely and adequate state court review is available, a federal court must not interfere with state administrative proceedings: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*American Centennial Ins. Co. v. Armco, Inc.,* (S.D.N.Y.1990) 746 F.Supp. 350, 354–55 (quoting *New Orleans Pub. Serv. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

Reliance argues that the *Burford* test is met in this case because for this Court to exercise jurisdiction over Reliance's claim would "violate the public policy of Pennsylvania and would hinder the effectiveness of Pennsylvania's comprehensive regulation of the insurance industry." Reliance Mem. of Law, ¶ 49. It also argues that for this Court not to abstain would "hinder the economy of Reliance's liquidation." *Id.* at ¶ 50.

### B. *Liquidating Trustee*

The LT uses the same four-part McCarran–Ferguson Act test to determine whether section 502 of the Code and 28 U.S.C. § 157 are reverse-preempted by the Pennsylvania Insurance Law. The LT admits that part (a) of the test is met, because the Code does not specifically relate to the business of insurance.

The LT challenges Reliance's contention that part (b) of the test is met, maintaining that the Pennsylvania law at issue was not enacted "for the purpose of regulating insurance activities." The LT argues that the three-pronged test contained in *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), used to determine whether a statute was enacted for the purpose of regulating insurance activities, demonstrates that the Pennsylvania law was not enacted for that purpose. The *Pireno* test requires that in order to determine whether a statute was enacted for the purpose of regulating insurance, the practice in question must have the effect of transferring or spreading a policyholder's risk, must be an integral part of the policy relationship between the insurer and the insured, and the practice must be limited to entities within the insurance industry. *Id.* at 129, 102 S.Ct. 3002 (*citing Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 212, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979)). The LT asserts that the Supreme Court's decisions in *Pireno* and *Royal Drug Co.,* have required a narrow interpretation of whether a state's insurance legislation is actually regulating its insurance industry. Moreover, the LT argues that Reliance's position that Debtors are indebted to Reliance for unpaid premiums is false, preventing Reliance from invoking § 221.35(a) of the Pennsylvania Insurance Law. As a result, the LT asserts that the three-pronged *Pireno* test has not been met, and, hence, that the Pennsylvania Insurance Law applicable here was not enacted for the purpose of regulating insurance activities.

As for part (c) of the McCarran–Ferguson Act test, the LT maintains that the activities underlying Reliance's claim are not "the business of insurance" within the meaning of the McCarran–Ferguson Act. The LT again cites the Supreme Court's decision in *Royal Drug,* which differentiates between the "business of insurance"

and the "business of insurance companies." The LT argues that, as in *Royal Drug*, the issues underlying Reliance's proof of claim in this case concern the business of the insurance company, rather than the business of insurance. *See Royal Drug*, 440 U.S. at 217, 99 S.Ct. 1067.

For part (d) of the McCarran–Ferguson Act test, the LT maintains that the application of the Code would *not* invalidate, impair or supersede the Pennsylvania Insurance Law because the two do not conflict. The LT points to section 221.23(6) of that law, which specifically authorizes the insurance liquidator "to institute timely action in other jurisdictions" in its efforts to "collect all debts and moneys due and claims belonging to the insurer ..." 40 Pa. Stat. Ann. § 221.23(6) (2005). This language leads the LT to conclude that the drafters of the Pennsylvania Insurance Law envisioned insolvent insurers participating in and submitting to other jurisdictions; hence, the application of the Code in this instance would not impair, invalidate or supersede the Pennsylvania Insurance Law.

In regard to Reliance's argument concerning the "first assuming jurisdiction" doctrine, the LT concedes that Reliance's liquidation proceedings, and the Pennsylvania Commonwealth Court's assumption of jurisdiction, were commenced prior to Agway's bankruptcy filing. The LT denies the relevance of this chronology, however, noting that *Penn General Casualty Co.* applies only when a state and federal court "each asserts the right to exercise its jurisdiction with respect to *substantially the same subject matter*, the liquidation of the business assets of the insolvent corporation ..." *Penn General Casualty Co.*, 294 U.S. at 194, 55 S.Ct. 386 (emphasis added). With this Court concerning itself only with the administration of Agway's assets and liabilities, and the Commonwealth Court of

Pennsylvania concerned only with Reliance's liquidation, the LT argues that this Court and the Commonwealth Court of Pennsylvania do not share "substantially the same subject matter" central to the Supreme Court's holding in *Penn General Casualty Co.* Thus, the "first assuming jurisdiction" doctrine is inapplicable to this case.

Finally, the LT asserts that Reliance's argument that the two-part test for *Burford* abstention has not been met. There are no difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case at bar, when the only issue before this Court is the allowance of the claim filed by Reliance in Agway's bankruptcy. For the same reason, the LT also contends that this Court's exercising jurisdiction over this matter will not disrupt state efforts to establish coherent policy with respect to a matter of substantial public import. In support of its position, the LT cites *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 8 F.3d 953 (3rd Cir.1993). In *Grode*, the Third Circuit Court of Appeals held that "a simple contract action involving an allegedly unpaid debt" did not involve the "complex and highly regulated issues of insurance regulation." *Id.* at 959.

## DISCUSSION

### 1. Core Jurisdiction

■■■ 28 U.S.C. §§ 157 and 1334 define this Court's subject matter jurisdiction. *Plaza Latham Assocs. v. Citicorp North America, Inc.*, 150 B.R. 507, 510 (N.D.N.Y. 1993). Section 1334(b) states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." As permitted by section 157(a), the United States District Court for the Northern District of New York vested the bankruptcy courts of this

District with four categories of subject matter jurisdiction: (1) cases "under title 11", (2) civil proceedings "arising under title 11", (3) civil proceedings "arising in" a case under title 11; and (4) civil proceedings "related to" a case under title 11. *Local Rule 76.1 for the U.S. District Court for the Northern District of New York.* Cases or proceedings "arising under" or "arising in" a case under title 11 are considered core proceedings. The distinction between core and non-core proceedings arose in the Supreme Court's landmark decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Core proceedings were deemed to be those which lie "at the core of the federal bankruptcy power." *Id.* at 71, 102 S.Ct. 2858. Section 157(b)(2) of title 28 subsequently codified the core, non-core distinction of the Supreme Court's *Marathon* decision, and lists the "allowance or disallowance of claims against the estate ... and estimation of claims or interests ..." as core proceedings. 28 U.S.C. § 157(b)(2)(B). Not surprisingly, this is reflected in the case law. "The estimation and allowance or disallowance of claims against a debtor's estate are core proceedings over which a bankruptcy court has jurisdiction." *In re Hirsch,* 339 B.R. 18, 25 (E.D.N.Y.2006); *see also In re Drexel Burnham Lambert Group, Inc.,* 1990 WL 302177 *2, 1990 Bankr.LEXIS 2889 *31 (Bankr.S.D.N.Y. 1990) (stating that "[t]he Bankruptcy Court is the proper forum for the determination of the liquidation of a claim against the estates.")

■ "By filing a proof of claim, [the creditor] rendered his claims core proceedings and necessarily became a party under the bankruptcy court's core jurisdiction. That [the creditor] may have been forced by procedural rules to file his claim to avoid losing it is irrelevant." *Tallo v. Gia-*

*nopoulos,* 321 B.R. 23, 27 (E.D.N.Y.2005) (citations omitted). Reliance's argument that it only filed its claim in order to fulfill its "fiduciary obligations and responsibility in the face of a bar date" (Reliance Mem. of Law, ¶ 41) has no merit. Similarly, its assertion that "when it has appeared before this Court, Reliance has always contended that this Court does not have jurisdiction over the claim" (*Id.*) is of no legal consequence.

The Second Circuit has addressed the issue of a creditor's submission to the bankruptcy court's jurisdiction. "By filing a proof of claim, [the creditor] submitted itself to the equitable power of the bankruptcy court to disallow its claim." *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1389 (2d Cir.1990) (*citing Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).

In *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702 (2d Cir. 1995), the Second Circuit revisited this issue, concluding that

> when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law.... [T]he determinative factor as to the bankruptcy court's jurisdiction in this case is that the [creditor] filed a proof of claim resulting in an adversary proceeding that involved the allowance or disallowance of claims against the estate. In so doing, the [creditor] necessarily became a party under the court's core jurisdiction.

*Id.* at 705 (citations omitted).

Accordingly, this Court's core jurisdiction over Reliance's claim and the LT's motion is clear.

2. *McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (2006)*

■ The gravamen of Reliance's argument is that the Pennsylvania Insurance Law reverse-preempts the Code and 28 U.S.C. § 157 under the McCarran–Ferguson Act, thus removing consideration of Reliance's claim against the Debtors from the jurisdiction of this Court. At the outset, it is worth examining the analysis and holding of *Rubin*, the very case Reliance relies upon for the four-part test to determine whether the federal statute must yield to, or is reverse-preempted by, state law under the McCarran–Ferguson Act. The relevant issue in that case was whether the injunctive relief requested pursuant to former Code section 304 would "invalidate, impair or supersede the state law regulating insurance" (the fourth prong of the four-part McCarran–Ferguson Act test), in this case the insurance laws of New York and New Jersey. In *Rubin*, former U.S. Bankruptcy Judge Tina Brozman looked for conflict between former Code § 304 and the insurance laws of New York and New Jersey "relating to the liquidation of nondomiciliary insolvent insurers" and found none. Indeed, Judge Brozman found that to argue that former Code § 304 "conflicts with the insurance laws of either state is nothing short of silly." *Id.* at 281.

This Court has examined the relevant sections of Pennsylvania's Insurance Law.[4] It has not found any way in which Code § 502 or 28 U.S.C. § 157 "invalidate, impair or supersede" Pennsylvania's Insurance Law. Indeed, as pointed out by the LT in his papers, § 221.23(6) of the Pennsylvania Insurance Law specifically authorizes the insurance liquidator to "institute timely action *in other jurisdictions*"

in order to "collect all debts and moneys due and claims belonging to the insurer which it is economical to collect . . ." 40 Pa. Stat. Ann. § 221.23(6) (2005) (emphasis added). Such language indicates that the drafters of Pennsylvania's Insurance Law clearly anticipated instances in which other courts would have jurisdiction in matters concerning an insolvent insurer. Certainly, no argument advanced by Reliance convinces this Court that core proceedings involving claims by a Pennsylvania insurer against this debtor should not be one of those instances. Absent from any of Reliance's arguments concerning jurisdiction is even a single case in which a bankruptcy court's jurisdiction over a claim filed by a creditor against the bankruptcy estate has been precluded or reverse-preempted by a state insurance statute pursuant to the McCarran–Ferguson Act.

The one case Reliance does cite in which a court held that the application of the Code would "invalidate, impair or supersede" a state insurance law is *Logan v. Credit General Ins. Co. (In re PRS Ins. Group, Inc.),* 294 B.R. 609 (Bankr.Del. 2003). In *PRS*, however, it was the debtor that initiated an adversary proceeding against the insurer, seeking avoidance and recovery of preferential and fraudulent transfers from the insolvent insurer. The *PRS* court found that such a recovery of property from the insolvent insurer under sections 547 and 548 of the Code would directly conflict with the state's (Ohio's) priority of distribution of claims as set out by its insurance statute. Reliance has the arrow of causation pointed in exactly the wrong direction. Had Agway commenced an action against it for recovery of preferences or fraudulent transfers, Reliance may well have had a colorable argument

---

4. Those sections specifically cited to by Reliance in its Memorandum of Law: 40 Pa. Stat. Ann. §§ 221.4(d), 221.23, and 221.35(a).

that the fourth prong of the McCarran–Ferguson Act test had been met, and that this Court lacks jurisdiction. There is no case law that Reliance has cited to, however, which concludes that a contested matter initiated by a proof of claim filed by an insurer removes that matter from the bankruptcy court's core jurisdiction pursuant to the McCarran–Ferguson Act.[5]

As Reliance cannot establish compliance with the fourth prong of the McCarran–Ferguson Act test, this Court finds it unnecessary to reach the issue of whether the second or third prongs of the McCarran–Ferguson test have been met.[6]

### 3. *Burford Abstention*

■ Reliance's alternative request that this Court abstain from exercising jurisdiction over the LT's motion to expunge Reliance's claim rests on the existence of (1) a difficult question of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) federal review of the question in a case and in similar cases being disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *See American Centennial Ins. Co. v. Armco, Inc.* (S.D.N.Y.1990) 746 F.Supp. 350, 354–55 (quoting *New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

The determination of claims is among the most common proceedings dealt with by this Court. The fact that Reliance has been declared insolvent and placed into liquidation by the Commonwealth Court of Pennsylvania does not change the nature of this claim determination motion. As the court opined in the case cited by Reliance, "... it is black letter law that the liquidator of an insolvent insurance company steps into the shoes of the insurer, assum-

---

5. It is worth noting that the Insurance Commissioner appointed by the Commonwealth Court of Pennsylvania to liquidate Reliance has asserted this reverse-preemption argument more than once, and failed. In *Koken v. Cologne Reinsurance, Ltd.*, 34 F.Supp.2d 240 (M.D.Pa.1999), ("*Koken I*") the United States District Court held that the Insurance Commissioner's action against a third party for failure to make payments under a co-insurance agreement "had nothing to do with Pennsylvania's statutory scheme for the regulation of the business of insurance because it is not an action *against* an insolvent insurer's estate that might deprive it of assets ..." *Id.* at 247 (emphasis added). Indeed, Insurance Commissioner Koken made the same McCarran–Ferguson Act argument before the same court again in 2006, prompting the court to opine that "[t]he insurance commissioner's current arguments mirror those she made in *Koken I*. Notably, she has not provided any argument or case law that contravenes our conclusion as to the applicability of reverse-preemption under the McCarran–Ferguson Act." *Koken v. Cologne Reinsurance, Ltd.*, 2006 WL 2460902 *3, 2006 U.S. Dist. LEXIS 59540 *10 (M.D.Pa.2006).

6. Although it need not reach the issues, this Court notes its skepticism regarding Reliance's argument that the second and third prongs of the McCarran–Ferguson Act are met. This Court's reading of *Pireno* and *Royal Drug* casts considerable doubt as to whether Reliance's argument that the Pennsylvania Insurance Rehabilitation/Liquidation Scheme was enacted for the purpose of regulating the business of insurance stands up to *Royal Drug's* distinction between "the business of insurance" and the "business of insurance companies." Likewise, Reliance's assertion that the activities that brought about its claim are the business of insurance is vulnerable to this reading. That assertion is also vulnerable to the fact that Reliance's claim and this Court's treatment of that claim have nothing to do with Pennsylvania's statutory scheme for the regulation of the business of insurance. *See Koken I*, 34 F.Supp.2d at 247 (stating that federal jurisdiction was not reverse-preempted by the McCarran–Ferguson Act in an action by the Pennsylvania Insurance Commissioner against a third party for nonpayment under a co-insurance agreement).

ing all its rights and subject to all the defenses the insurer was subject to at the time of insolvency. *Liquidation orders do not magically change the nature of debts and obligations in the ordinary case." In re Rubin,* 160 B.R. at 281 (citations omitted) (emphasis added). There exist no difficult questions of state law, or a scintilla of evidence that this Court's ruling on the motion will disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern. Therefore, Reliance's *Burford* abstention argument is without merit.[7]

### 4. *First Assuming Jurisdiction Doctrine*

 The "first assuming jurisdiction" doctrine, as outlined in the Supreme Court's *Penn General Casualty Co.* decision, applies only when two courts each assert "the right to exercise its jurisdiction with respect to *substantially the same subject matter,* the liquidation of the business assets of the insolvent corporation . . ." *Penn General Casualty Co.,* 294 U.S. at 194, 55 S.Ct. 386 (emphasis added).

Reliance would have this Court believe that because the Commonwealth Court of Pennsylvania, in its October 3, 2001 Liquidation Order, arrogated to itself *"in rem* jurisdiction over all assets of [Reliance] wherever they may be located and regard-less of whether they are held in the name of [Reliance] or any other name . . ." (Reliance Mem. of Law, Ex. "B," ¶ 5), any claim Reliance had pending in any court on that date automatically became subject to the Pennsylvania court's jurisdiction. Following this reasoning to its conclusion, any claims Reliance had as of October 3, 2001 pending in any federal or state court anywhere in the country would be thereafter adjudicated by the Commonwealth Court. This argument is untenable on its face. There is a reason the Commonwealth Court crafted its Liquidation Order to grant itself *"exclusive* jurisdiction over all determinations of the validity and amount of claims *against* Reliance," *"exclusive* jurisdiction over the determination of the distribution priority of all claims *against* Reliance," but only *"in rem* jurisdiction over all assets of [Reliance] wherever they may be located . . ." *Id.* (emphasis added). The Commonwealth Court of Pennsylvania and this Court do not share the requisite identity of subject matter needed to trigger the "first assuming jurisdiction" doctrine outlined in the Supreme Court's *Penn General Casualty Co.* decision. Thus, the "first assuming jurisdiction" doctrine is irrelevant in this case.[8]

### 5. *Conclusion*

Reliance waited nearly three full years after filing its proof of claim in this case to

---

**7.** As with the McCarran–Ferguson Act issue, it is worth noting that Ms. Koken has urged the *Burford* abstention argument, unsuccessfully, more than once before. In *Koken v. Cologne Reinsurance (Barbados) Ltd.,* 2006 WL 2460902, 2006 U.S. Dist. LEXIS 59540 (M.D.Pa.2006), the district court opined that "the majority of our opinion [in *Koken I*] focused on why we should not abstain from deciding the issues in *Koken I* under the Supreme Court's decision in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *However, the Insurance Commissioner relied on the [same] arguments she made in support of Burford abstention to support her contention [that] Pennsylvania's in-surance scheme would be impaired if we compelled arbitration." Id.* at n. 3 (emphasis added).

**8.** Even if Reliance maintains that the Letters of Credit and Surety Bonds securing the deductible portion of its policies are under the *in rem* jurisdiction of the Commonwealth Court, those instruments are arguably not property of the bankruptcy estate, and this Court does not require "possession or control of the property" as specified in *Penn General Casualty.* Thus, again, the "first assuming jurisdiction" doctrine is not indicated.

make its McCarran–Ferguson or *Burford* abstention arguments that this Court either lacked jurisdiction over its proof of claim, or should abstain from making a determination regarding that claim in favor of the Commonwealth Court of Pennsylvania. Its arguments both that all four prongs of the McCarran–Ferguson Act test have been met, depriving this Court of jurisdiction in this matter, or that the two-part *Burford* abstention test was fulfilled, mandating that this Court abstain from exercising its jurisdiction, are unavailing. If Judge Brozman found the argument that former Code § 304 conflicted with the insurance laws of New York and New Jersey to be "nothing short of silly" (*In re Rubin*, 160 B.R. at 281), this Court finds Reliance's very tardy submission of its barely colorable arguments in this matter to be just short of a deliberately dilatory attempt to frustrate the efficient resolution of this case.[9] Based on the foregoing, it is hereby

ORDERED that Reliance's motion for an order determining that this Court lacks jurisdiction, or in the alternative that this Court abstain from hearing the LT's motion for an order expunging claim 4179 filed by Reliance, is denied.

---

**9.** In fact, Reliance's argument that it filed its proof of claim in this case solely to fulfill its fiduciary obligations, and "has always contended that this Court does not have jurisdiction over the claim" (Reliance Mem. of Law ¶ 23) does not even rise to the level of a colorable argument.