In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by FRANCIS R. STODDARD, JR., as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Assets of THE CITY EQUITABLE FIRE INSURANCE COMPANY, LTD., OF LONDON, ENGLAND.

(CARPINTER & BAKER, Plaintiff, Respondent, v. THE CITY EQUITABLE FIRE INSURANCE COMPANY, LTD., Defendant.)

H. E. BURGESS, as Liquidator of THE CITY EQUITABLE FIRE INSURANCE COMPANY, LTD., Appearing Specially, and FRANCIS R. STODDARD, JR., as Superintendent of Insurance of the State of New York, Appearing Specially, Appellants.

First Department, November 30, 1923.

Insurance — action against English insurance company pending liquidation proceedings under English statute — surplus in possession of State Superintendent of Insurance not subject to attachment in this State after commencement of winding-up proceedings in England — State Superintendent of Insurance should return surplus moneys to English liquidator.

In an action on a claim owned by Canadian creditors and assigned to a New York corporation, the surplus moneys of the defendant, an English fire insurance company, in the possession of the State Superintendent of Insurance as State liquidator are not subject to attachment in this State, after winding-up proceedings are commenced in England, where it appears that the company was organized under an English statute which provides for the method of liquidation in case of insolvency.

*It seems*, that it is the duty of the State Superintendent of Insurance to return the surplus moneys to the English liquidator.

APPEALS by H. E. Burgess, as liquidator, etc., and by Francis R. Stoddard, Jr., as Superintendent of Insurance, etc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of April, 1923, withdrawing the summons, complaint and warrant of attachment in the action of Carpinter & Baker against the City Equitable Fire Insurance Company, Ltd., and granting the plaintiff therein leave to commence a new action against the defendant therein, and to apply for a warrant of attachment of the surplus of the property of said defendant remaining in the hands of the Superintendent of Insurance of the State of New York, after the payment of all claims presented to him and allowed.

The opinions delivered at Special Term are reported in *Matter of City Equitable Fire Ins. Co., Ltd.* (N. Y. L. J. March 17, 1923; Id. April 30, 1923). A former motion, made by Carpinter & Baker for

**250** MATTER OF CITY E. F. INS. CO., LTD. (CARPINTER & BAKER).

First Department, November, 1923. [Vol. 207

leave to enter judgment in the action out of which the present motion arose, was denied. (See *Matter of City Equitable Fire Ins. Co., Ltd.*, 120 Misc. Rep. 245.)

*Barry, Wainwright, Thacher & Symmers* [*Herbert Barry* of counsel], for the appellant H. E. Burgess, as liquidator, etc., appearing specially.

*Clarence C. Fowler* [*Clarence W. Roberts* with him on the brief], for the appellant Superintendent of Insurance, appearing specially.

*Rumsey & Morgan* [*Louis J. Wolff* of counsel; *David Rumsey* with him on the brief], for the respondent.

FINCH, J.:

The City Equitable Fire Insurance Company was incorporated under English law and domiciled in England. Pursuant to section 27 of the Insurance Law (as added by Laws of 1919, chap. 382), it obtained the right to do business in this State by depositing securities with the Superintendent of Insurance of New York as a trust fund and also made a deposit with the Superintendent of Insurance of Ohio and a further deposit in trust of other funds and securities with the Central Union Trust Company as trustee to pay all lawful claims of policyholders and creditors in the United States. The company becoming insolvent, proceedings were started in England to wind it up under the English Companies (Consolidation) Act of 1908 (8 Edw. 7, chap. 69, pt. 4). The Superintendent of Insurance of New York State took possession of the assets, including all these funds so deposited, as ancillary receiver, upon a petition which recited that " it is doubtful whether said United States branch will have assets and funds sufficient to pay all policyholders and creditors in the United States." (See Ins. Law, § 63, subd. 5, added by Laws of 1912, chap. 217, as amd. by Laws of 1918, chap. 119.) For the purposes of this appeal, it may be assumed that all the creditors in the United States have been paid in full and that there remains a surplus in the hands of the Superintendent of Insurance. The City Equitable Fire Insurance Company had, previous to its insolvency, entered into certain reinsurance agreements with two Canadian corporations and the claims upon which the action is brought are based upon these contracts. These two Canadian creditors having assigned to a New York corporation, after the order of liquidation, the latter now desires permission to attach this fund and apply it on account of these claims. The question which arises is whether this surplus should be forwarded by the Superintendent of Insurance to the English liquidator. Said assignee of the Canadian creditors claims, *first*, that these creditors have an absolute right to sue the debtor (whose corporate existence

they allege is kept alive by the English act during the winding up) wherever such debtor may be found, and, because of their diligence, apply the funds obtained on account of their claims until paid; and *secondly*, that while all creditors resident in England are bound by the English act and can only prove their claims in that proceeding, this does not apply to creditors who are domiciled in any other country except England.   There is thus presented for decision a conflict of rights between a statutory liquidator in England and a foreign creditor in New York State who, after the commencement of the winding-up proceeding in England, seeks to attach property in the hands of a New York State statutory liquidator.   Although it is true that the Canadian creditors have assigned to a New York corporation, it does not appear on this record, and no attempt so to claim was made on the argument, that the assignee stands in a different position from that of the Canadian creditors.

While it is true that under the English winding-up act the title remains in the company, the courts of England have construed the provisions of the winding-up act as making the property of the company in the process of being wound up, trust property.   In *Matter of Oriental Inland Steam Co.* (L. R. [1873–74] 9 Ch. App. Cas. 557, 560) the court said: " It is property affected by the Act of Parliament* with an obligation to be dealt with by the proper officer in a particular way.   Then it has ceased to be beneficially the property of the company; and, being so, it has ceased to be liable to be seized by the execution creditors of the company. * * * There were assets fixed by the Act of Parliament with a trust for equal distribution amongst the creditors.   One creditor has, by means of an execution abroad, been able to obtain possession of part of those assets.   The Vice-Chancellor was of opinion that this was the same as that of one *cestui que trust* getting possession of the trust property after the property had been affected with notice of the trust.   If so, that *cestui que trust* must bring it in for distribution among the other *cestuis que trust*.   So I, too, am of opinion, that these creditors cannot get any priority over their fellow-creditors by reason of their having got possession of the assets in this way.   The assets must be distributed in England upon the footing of equality."

The City Equitable Fire Insurance Company, Ltd., was organized under the Companies Act of the Kingdom of Great Britain and Ireland, which provides for the method of liquidation in case of insolvency, and, therefore, its provisions are presumed to be a part of the charter of said company, and hence have extra-territorial

* See Companies Act, 1862; 25 & 26 Vict. chap. 89, pt. 4; now Companies (Consolidation) Act, 1908; 8 Edw. 7, chap. 69, pt. 4.— [REP.

operation and effect. (*Sinnott* v. *Hanan*, 214 N. Y. 454; *Relfe* v. *Rundle*, 103 U. S. 222; *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. Rep. 305.) The right, therefore, of the English statutory liquidator to assert his beneficial right to these assets should not be denied, in the absence of some statute of this State or some controlling decision of the courts, or some equity, which would prevent or make it inequitable to enforce this equitable right. (*Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183.) None such have been shown. In addition, there appear other reasons for giving to the English liquidator the right to take possession of these assets for the purpose of distribution under the English act. It is to be noted that the attachment did not issue until after the winding-up order was made and the assets actually had come into the hands of the New York statutory liquidator, hence there was no charge on the property prior to the time that the trust for the benefit of all the creditors arose. The facts in the case of *Matter of Oriental Inland Steam Co.* (*supra*) were quite similar in this regard. The court there said (p. 560): " Then it is said that the assets are subject to the law of the place where they are. I quite agree that if the law of the place where they are had given a charge of that nature on the assets prior to the time when the petition for winding-up was presented, or possibly prior to the time when the winding-up order was made, and a judgment, for instance, had been put on the register, that might, by the law of Bombay, have constituted a charge on the property of the company, and then the trust for the benefit of the creditors would have been subject to that charge. But here there is no allegation that the judgment in Bombay, any more than a judgment here, simply *qua* judgment, operates as any charge at all. It is quite clear that it does not, and that until the execution and attachment have issued and been executed, there is no actual charge on the property. That charge is subsequent to the creation of the trust, and is made by the particular Appellants here with full notice of the trust.

" The consequence necessarily follows, that in this Court these creditors cannot be allowed to obtain priority; and that they must give up, for the benefit of the creditors, what they have so obtained."

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

Clarke, P. J., Dowling, McAvoy and Martin, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.