*103 OPINION OF THE COURT
Ira Gammerman, J.
The Superintendent of Insurance, as liquidator of Union Indemnity Insurance Company of New York (Union), seeks an order, pursuant to Insurance Law § 7419, directing Frank B. Hall and Co. of Connecticut, Inc. (Hall) to turn over to the Superintendent certain funds held in accounts for First American Bank of New York.
On June 1, 1983, Union entered into an agreement with the Public Employer Risk Management Association (PERMA), under which Union agreed to provide workers’ compensation insurance coverage to the individual members of PERMA, consisting of various local governments in New York State. In connection with that agreement, Union entered into an agency agreement with Hall dated May 31, 1983. The May 31, 1983 agreement provided that Hall would act as agent for Union in the operation of PERMA’s workers’ compensation program. Hall, as Union’s agent, was authorized to collect and receive the premium payments, to administer and process the payment of claims and to invest the funds collected on behalf of Union. The agency arrangement created by the May 31, 1983 agreement resulted in Hall completely assuming all the legal functions of an insurance company in the administration of PERMA’s workers’ compensation program. Hall established accounts at the Banker’s Trust Company of Albany, N. A., now known as First American Bank of New York. It is these accounts which the liquidator seeks, maintaining that they are the general assets of Union.
Both Hall and PERMA oppose the application. Half contends that the workers’ compensation program is essentially a self-insurance program, that Union was paid its fee, and is not entitled to any further compensation. PERMA maintains the same position and requests that, in addition, the court impose a constructive trust on the funds sought in order to prevent unjust enrichment of the liquidator.
Under the PERMA-Union workers’ compensation program, premiums were to be paid to Hall, as agent for Union. Seventy per cent of the premiums collected were to provide a pool to pay claims. The remaining 30% was to be used to pay commissions, taxes and to pay for reinsurance that Union would obtain from Safety Mutual Casualty Corporation in order to provide for the payment of any claims in excess of the premium fund.
At the close of each insurance year, Union would evaluate *104 the claims history of the plan and project the next year’s pattern of claims. If adequate funds remained in the claims pool (the 70%) then, with Union’s consent, a dividend would be returned to PERMA. Such dividend was, in fact, paid and distributed after the first year of the insurance program. In 1985, however, after the expiration of the 1984/1985 policy, but prior to distribution of any dividend, Union went into liquidation. In excess of $900,000 is on deposit at the First American Bank of New York, representing the unutilized portion of the 70% of the premiums set aside for the payment of claims. It is this amount that the liquidator is seekjng on this application.
The issue that is raised is whether the funds held at First American Bank of New York are the general assets of the insurance company or, alternatively, protected funds.
For the purposes of liquidation, Insurance Law § 7408 (b) (7) defines general assets as follows: "all property, real, personal, or otherwise, not specifically mortgaged, pledged, deposited, or otherwise encumbered for the security or benefit of specified persons or a limited class of persons”. Assets held in trust and assets held on deposit for the security of all policyholders are "general assets”.
A special deposit is defined in Insurance Law § 7408 (b) (9) as: "any claim secured by a deposit made pursuant to statute for the security or benefit of a limited class of persons, but not including any general assets,”
The funds sought by the liquidator are premiums fully earned by Union that were segregated for the purpose of providing a pool from which to pay claims under the policies issued. These funds were not deposited or held in trust pursuant to statute.
This State has adopted the Uniform Insurance Liquidation Act, which contains section 7408, parts of which were quoted above. Funds segregated by an insurer for the payment of claims (which are the subject of these proceedings) constitute general assets of the insurer. (See, Cork v Associated Intl. Ins. Managers, 58 Ill App 2d 331, 208 NE2d 4.)
While Hall may, indeed, be acting in a dual capacity as agent for both the insured and the insurer, the premiums held were fully earned and, thus, PERMA is not entitled to their return per se. (See, Bohlinger v Zanger, 306 NY 228.) PERMA, at the most, may have a claim in the liquidation against Union for any unpaid dividends in connection with the policy *105 year expiring immediately before Union was placed in liquidation.
The PERMA-Union workers’ compensation agreement was not a self-insurance plan. Approval for such a plan could not be obtained from the Workers’ Compensation Board at the time the contract was signed. Under the agreements establishing the plan, Union provided insurance to PERMA through Hall. Union bore the primary risk of all claims. If the fund set aside for the payment of claims (70% of the premiums collected) was exhausted, then Union was obligated to pay from its funds any additional claims before the reinsurance provided by Safety Mutual Insurance Company could be utilized. Such reinsurance did not provide direct excess coverage with respect to claims made under the plan. Contrary to the assertions of Hall and PERMA, Union had exposure (albeit a limited one), and the plan was not entirely self-funding. Union had all of the obligations of a primary insurance carrier and was subject to liability on the claims presented. It was, therefore, entitled to the premiums collected.
The constructive trust argument advanced by PERMA is premised on PERMA’s claim that it is a self-insurer. As indicated above, this was not a self-insurance plan. The equitable doctrine of constructive trust cannot be employed to permit a self-insurance plan which would otherwise not be approved by the Workers’ Compensation Board. When the plan was established, PERMA was not authorized to act as a self-insurer. It cannot, by indirection, seek to accomplish that end.
Accordingly, the application is granted and Hall is directed to turn over to the liquidator the funds on deposit with First American Bank of New York.