**In re Pinhas RUBIN and Joseph Halevy, as Liquidators of The Israel Reinsurance Company, Ltd.**

**Bankruptcy No. 92–46955 (TLB).**

United States Bankruptcy Court,
S.D. New York.

Oct. 13, 1993.

As Amended Oct. 19, 1993.

to the relief sought, agreeing that injunctive relief is appropriate to stymie the more aggressive beneficiary/creditor's pursuit of preferential treatment, but urging that turnover of the trust corpus to the liquidators is not.

Fischbein Badillo Wagner & Itzler, New York City by Philip H. Kalban, and I. Gornitzky & Co., Tel Aviv, Israel, by Dr. Dalia Even, for petitioners.

Werner & Kennedy, New York City by John M. Nonna, Brendan Kennedy, for Samuel Fortunato in his Capacity as Liquidator of Integrity Ins. Co.

Adams, Duque & Hazeltine, New York City by Huhnsik Chung, for the Employers Reinsurance Union.

Leboeuf, Lamb, Leiby & Macrae, New York City by Ronald J. Gizzi, for Bankers Trust.

## DECISION ON SECTION 304 PETITION AND OTHER RELATED RELIEF

TINA L. BROZMAN, Bankruptcy Judge.

Two liquidators of an Israeli reinsurance [1] company seek under 11 U.S.C. § 304 certain injunctive relief and to repatriate the corpus of a trust funded by a letter of credit for pro rata distribution to its American beneficiaries after determination of the beneficiaries' respective allowable claims. Under the terms of the trust, by contrast, the race of the swiftest would pay off. Thus, a beneficiary/creditor who has already commenced suit against the reinsurance company in order to establish his rights under the trust objects to the relief sought, for if it is granted, he will lose his headstart over other beneficiaries. Another beneficiary/creditor objects in part

## I.

Pinhas Rubin and Joseph Halevy ("the Petitioners") are the liquidators of The Israel Reinsurance Company Ltd. ("Israel Re"), the reinsurance company alluded to above. Israel Re is organized under the laws of Israel, has its principal place of business in Tel Aviv, and currently is undergoing liquidation under the auspices of the Tel Aviv District Court. The Petitioners commenced a case ancillary to the Israeli liquidation on December 17, 1992. At that time they sought a temporary restraining order to enjoin the continuation of an action brought against Israel Re by Samuel Fortunato, as liquidator of Integrity Insurance Company ("Integrity"), which suit is pending before the District Court in this district (the "*Fortunato* action"). That requested relief was withdrawn, however, when the parties stipulated to stay further actions pending the hearing on the ancillary petition and the injunction sought therein.[2] As a further concession to civility in litigation, the parties agreed that the salient facts were undisputed and that I could look to their various affidavits for the necessary background.

## II.

Israel Re is not licensed by any state in the United States as an insurance company and has never maintained an office here. It is, however, a participant in numerous reinsurance "treaties" with American insurance companies and has a trust fund in this district at Bankers Trust Company ("Bankers Trust"), consisting of a two million dollar

---

**1.** Reinsurance is a contract by which one insurer insures the risks of another insurer. *Christiania General Ins. Corp. v. Great American Ins. Co.*, 979 F.2d 268, 271 (2d Cir.1992).

**2.** Whereas the Petitioners styled their prayer for injunctive relief as "preliminary" I frankly cannot figure out what it is meant to precede given that the Petitioners simultaneously sought and the objectants have responded to the Petitioners'

request for relief under section 304 of the Bankruptcy Code. Thus, I am left with the firm impression that all parties are expecting me to grant or deny the ancillary petition, including the permanent injunctive relief therein mentioned. If I am mistaken, we will have to deal with the appropriate relief, if necessary, with an additional hearing when an order is settled implementing this decision.

letter of credit (the "Trust") for the benefit of domestic insurance carriers covered by the terms of the Trust ("American Policyholders"). The Trust agreement creates a first-come-first-paid priority scheme. The *Fortunato* action arises out of reinsurance treaties to which both Israel Re and Integrity are parties and seeks damages in the amount of $596,169, plus interest. Fortunato obtained an attachment of Israel Re's reversionary interest in the Trust for the amount of damages sought. This was not the sole method which Fortunato employed to collect the debt alleged to be due Integrity from Israel Re, for he earlier had filed a claim in the liquidation proceeding in Israel. There, he seeks an amount substantially in excess of, but including, the amount sought in the *Fortunato* action. As is now apparent, Fortunato is the aggressive beneficiary/creditor identified but not named in the opening paragraph of this decision.

Other American insurance companies have filed claims in Israel arising under reinsurance treaties with Israel Re. To the extent such claims are valid and arose during the period of the Trust, those companies too have potential claims against the Trust. The claims filed by American Policyholders far exceed the $2 million Trust but none of these claims (including Integrity's) is enforceable under the terms of the Trust because certain conditions which it mandates have not been fulfilled by any of the claimants. It bears mentioning that the Trust was "terminated" in accordance with its provisions as of December 3, 1988. What this means is that new losses occurring after the date of termination would not be covered by the Trust; it does not mean that rights are forfeited of beneficiaries whose claims arose during the life of the Trust.

The Petitioners seek to have the Trust administered in such a way that all American Policyholders having rights as beneficiaries under the Trust will share pro rata in its proceeds. Indeed, to this end they have obtained an order of the Israeli court that the funds in the Trust be distributed on a pro rata basis solely to the American Policyholders until they are paid in full. Only if those beneficiaries' claims are satisfied will the re-

mainder revert to the Petitioners for distribution to Israel Re's general creditors. With that declaration from the Israeli tribunal in place, the Petitioners seek an order

(a) declaring that the Israeli liquidation proceeding is a foreign proceeding and that the Petitioners are foreign representatives of Israel Re within the meaning of sections 101(23), (24) and 304 of the Bankruptcy Code;

(b) enjoining the commencement or continuation, including, without limitation, the enforcement of any attachment or judgment or the execution on any assets, of any judicial, administrative or other action or proceeding against Israel Re, the Trust, any other Israel Re property in the United States, or Petitioners in their capacity as liquidators of Israel Re;

(c) enjoining the creation, perfection or enforcement of any attachment, lien, judgment or other claim against Israel Re, and vacating the attachment in the *Fortunato* action;

(d) directing that the $2 million Trust, after payment of any fees and expenses found to be owing to Bankers Trust, be transferred to and maintained in a segregated account to be held by Petitioners in trust for the benefit of all beneficiaries under the Trust agreement to be distributed pro rata only to the United States beneficiaries of the Trust after final determination by the Petitioners or the Tel Aviv District Court of the allowable claims of such beneficiaries.

The relief set out in subparagraph (a) above is not contested. The balance of the relief is. Fortunato contends that the Trust is not property of the Israel Re estate for bankruptcy purposes and, for four independent reasons, is therefore beyond the reach of the Israeli liquidation court and the Petitioners. He claims, first, that under the Bankruptcy Code and Israeli law, trusts are not considered property of a debtor's estate. Second, he says, the Trust agreement expressly contemplated the potential insolvency of Israel Re, providing that the security furnished by the Trust survive such an event. Third, he states, the Trust's sole asset is a letter of credit in which Israel Re holds no

interest. Fourth, he urges, the McCarran–Ferguson Act, 15 U.S.C.A. 1011 *et seq.*, precludes application of section 304 because an injunction would invalidate, impair, or supersede the applicable laws of New York and New Jersey.

## III.

### A. *Section 304*

■ The purpose of a section 304 filing is to prevent piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors. *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 348 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir.1987); *Cunard S.S. Co. v. Salen Reefer Services, A.B.*, 773 F.2d 452, 454–55 (2d Cir.1985). Section 304(a) authorizes a "foreign representative" in a "foreign proceeding" to commence a case ancillary to that proceeding in a United States bankruptcy court to protect the administration of the foreign proceeding. Here, it is conceded that the Israel Re winding up is a foreign proceeding and that the Petitioners are foreign representatives appointed by the Tel Aviv court.

■ In enacting section 304, which had no predecessor under the former Bankruptcy Act, Congress provided a mechanism for the courts in this country to aid foreign courts and accommodate the increasing number of foreign insolvency proceedings having extraterritorial effects within the United States. *Universal Casualty & Surety Co. Ltd. v. Gee (In re Gee)*, 53 B.R. 891, 896 (Bankr. S.D.N.Y.1985). Congress commanded that the court explore certain enumerated factors to decide whether relief ought be granted under the section. If I find that those factors contained in section 304(c) militate in favor of granting an ancillary petition to best assure an economical and expeditious administration of the foreign estate, I may enjoin commencement or continuation of an action against the foreign debtor with respect to property involved in the foreign proceeding or against the property. 11 U.S.C. § 304(b)(1). That the factors in section 304(c) point to the propriety of granting an ancillary petition does not mean in and of itself that I am free to grant any conceivable type of relief. For I may order turnover only of *property of* the foreign estate [3] or its proceeds, whereas I may enjoin actions against the *property of* the foreign estate and also against *property involved* in the foreign proceeding. Compare 11 U.S.C. § 304(b)(1) with 11 U.S.C. § 304(b)(2); *see In re Brierley,* 145 B.R. 151, 168 (Bankr.S.D.N.Y.1992).[4] In the turnover context, when an adverse claimant raises a plausible dispute concerning the ownership of the property sought to be repatriated, the court first must apply

**3.** The Petitioners erroneously argue throughout their papers that the Trust is property of their estate under section 541 of the Bankruptcy Code. There is no estate created under section 541 in an ancillary proceeding; the reference in section 304 to "such estate" is to the foreign estate. *See Koreag,* 961 F.2d at 348–49; *In re Goerg,* 844 F.2d 1562, 1567 (11th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989); *In re Brierley,* 145 B.R. at 160. This conclusion is compelled by the language of section 541(a) itself, which provides that "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate." Plainly missing from the list which Congress laid out is section 304. Therefore most of the provisions of Chapter 3, 5, 7, and 11 do not apply to ancillary proceedings, although a bankruptcy court may specifically order compliance with any provision of the Bankruptcy Code should equity dictate. H.R. Miller & G.A. Davis, *The Interplay of Insur-*

*ance Companies and the Bankruptcy Code,* (Practicing Law Institute, May–June 1993).

**4.** Section 304(b) provides that subject to the provisions of the following subsection of the statute, the court may:

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

local law, in this case, the law of New York[5], to determine whether the debtor has a valid ownership interest in the property. Second, the court must apply the law of the foreign forum to determine if the property is part "of [the] estate" of the debtor. *Koreag,* 961 F.2d at 348–50.

■ Although the estate of a foreign debtor is defined by the law of the jurisdiction in which the foreign proceeding is pending, *Metzeler v. Bouchard Transp. Co. (In re Metzeler,),* 78 B.R. 674, 677 (Bankr.S.D.N.Y. 1987), other applicable law serves to define the estate's interest in particular property. *Koreag,* 961 F.2d at 348; *In re Lines,* 81 B.R. 267, 271 (Bankr.S.D.N.Y.1988); *cf. Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1101 (2d Cir.1990).

In *Lines,* as here, an American reinsurance company (RCA) argued that the foreign reinsurance company in liquidation (River Plate) had no interest in a trust fund because the claims of other insurer/beneficiaries exceeded the amount of the fund. The *Lines* court rejected this contention. The existence of these potential claims was held not to deprive River Plate of its property interest in the fund because none of the claimants had completed the steps required by the trust agreement to enforce a claim. This was so even though RCA had already obtained and registered in New York a judgment against the trust, the appeal period had passed and only the thirty day waiting notice period had

not passed. *Lines,* 81 B.R. at 271–73. Unlike in *Lines,* no claimant to the Israel Re Trust has completed the steps required nor even obtained a judgment.[6]

The *Lines* court engaged in a threshold determination of local law, holding that the insurance fund was sufficiently connected to the debtor under New York law to be "involved in" the foreign proceeding. *Koreag,* 961 F.2d at 350 (citing *Lines,* 81 B.R. at 272). The court focused on the debtor's reversionary interest in the fund, which the court denominated a legal interest that existed on the date of the petition and which, it said, covered the entire fund because the thirty day waiting period required to perfect a claim against the fund had not expired. *Lines,* 81 B.R. at 271–72; *cf. In re Ocana,* 151 B.R. 670, 673 (S.D.N.Y.1993) (Panamanian debtor-reinsurance company's only interest in trust property was its reversionary interest).[7]

■ So I turn, as did *Lines,* to the applicable local law. Under New York law, a settlor who reserves an unqualified power of revocation remains the absolute owner of the trust's corpus so far as the rights of his creditors or purchasers are concerned. N.Y.Est.Powers & Trusts Law § 10–10.6 (McKinney 1992). Here, although Israel Re controls the timing of revocation, its power to revoke is qualified by the requirement of an audit and the subsequent withholding of funds sufficient to cover identified potential

(3) order other appropriate relief.

5. The Trust agreement is governed by New York law which is not surprising given that the assets are maintained in this jurisdiction.

6. Similarly to the trust agreement in *Lines,* the Israel Re Trust agreement requires that three conditions be satisfied in order for a claim to be enforceable against the Trust: the claimant must obtain a final judgment in a U.S. court as well as a certified copy of the judgment, proof of its finality must be filed with the Trustee, and a period of thirty days must elapse from the date of filing without the judgment being paid. Article II, Paragraph Two of the Trust agreement.

7. In *Ocana* a debtor-reinsurance company (LARSA) that was in a bankruptcy in Panama sought a stay of a district court action brought by a creditor of LARSA (Hannover) against the trustee (Citibank) of a statutorily required insurance

trust in New York. The court held that to the extent that Hannover's action was against Citibank as trustee and sought to establish claims against trust property, such an action was not with respect to property involved in LARSA's bankruptcy proceeding.

Unlike here, the trust fund at issue in *Ocana* was established pursuant to New York Insurance Department regulation 41, 11 NYCRR § 27.5 which provides that a foreign or alien insurance company not licensed to do business in New York must establish an irrevocable trust for the benefit of its "policyholders and beneficiaries." "In the event the insurer is found to be insolvent, pursuant to the laws of its domiciliary jurisdiction, the trustee shall disburse funds at the direction of the Superintendent of Insurance ..." Additionally, the action in *Ocana* was brought against the trustee and not the debtor as an audit had already been performed to determine the outstanding claims against the trust.

276

claims. Article II, paragraph 11 of the Trust agreement. Absent an express, unrestricted power of revocation, which must be accomplished as per its terms and conditions, a settlor generally loses all control of the trust's property. *In re Mordecai's Trust*, 24 Misc.2d 668, 201 N.Y.S.2d 899, 901 (Sup.Ct.), *aff'd*, 12 A.D.2d 449, 210 N.Y.S.2d 478 (1st Dep't 1960); *In re Columbia Trust Co.*, 97 Misc. 566, 163 N.Y.S. 536 (N.Y.Sur.1916).

In correspondence between Israel Re and Bankers Trust, Israel Re deemed the Trust terminated as of December 3, 1988. Exhibit # 8 Section 13. However, in that same letter, Israel Re requested that the independent audit be postponed until it sought release of the funds from Bankers Trust. Although the parties stipulated that potential claims against the Trust far exceed its assets, the required audit was never performed. Now, Petitioners seek withdrawal of the Trust from Bankers Trust. They do not seek dissolution of the Trust such that general creditors of Israel Re would share in its assets. Since Bankers Trust, at Israel Re's request, never commissioned an audit, Israel Re, by the terms of the Trust, is not now entitled to a remittance under the specific terms of the Trust. Nonetheless, precisely as Integrity argued to Judge Martin in the *Fortunato* action, Israel Re still maintains control over the Trust by virtue of its ability to direct payment from the Trust to any American Policyholder notwithstanding the stated conditions that a beneficiary must otherwise satisfy.

■ Interestingly, Fortunato had argued to Judge Martin, without success, that as Israel Re had "retained an 'unqualified power of revocation,' it must be considered the 'absolute owner' of any property placed in the Trust 'so far as the rights of [its] creditors or purchasers are concerned'" citing N.Y.Est.Powers & Trusts Law § 10–10.6.

8. Section 7–1.9(a), in pertinent part: "Upon the written consent ... of all persons beneficially interested in a trust of property ... the creator of such trust may revoke or amend the whole or any part thereof ..."

9. Section 7.2–1 of the New York Est. Powers & Trusts Law provides in pertinent part:
(a) Except as otherwise provided in this article, an express trust vests in the trustee the

Integrity urges me, on the other hand, to apply by analogy N.Y.Est.Powers & Trusts Law § 7–1.9(a) [8] which requires all persons with a beneficial interest in a trust to consent to revocation of that trust. To do this, Integrity would have me substitute the audit requirement in lieu of consent by the beneficiaries. I decline to engage in this exercise. The purpose of this statute is to provide a means to terminate trusts which by their terms are irrevocable. The statute does not apply to trusts with revocation provisions. *Murphy v. Serial Federal Savings & Loan Association*, 30 Misc.2d 450, 453, 216 N.Y.S.2d 228, 233 (N.Y.Mun.Ct., 1961); *Mordecai's Trust*, 201 N.Y.S.2d at 902. Because the Trust does have specific provisions for termination, Integrity acknowledges that the statute is not implicated.

■ As a beneficiary, Integrity does not have any legal estate in the property but may enforce the Trust provisions, thus giving it an equitable interest in the Trust. *Cohn v. U.S. Trust Co.*, 127 A.D.2d 523, 512 N.Y.S.2d 37 (1st Dept.1987). Bankers Trust has the legal estate of the Trust, N.Y.Est.Powers & Trusts Law § 7–2.1(a) [9]; *accord* N.Y.Ins.Law § 1315(e)(1)(a) (West 1985); *Ocana*, 151 B.R. at 673, however, the extent of this legal interest is limited by Israel Re's authority to provide for ownership of the property at termination of the Trust. N.Y.Est.Powers & Trusts Laws 7–2.1(b). The Trust Agreement provides that at termination of the Trust, Israel Re will receive all property not subject to withholding by Bankers Trust. After all valid claims are settled or the statute of limitations governing them has expired, Israel Re will be entitled to the remainder of the Trust. As noted above, at the time the *Fortunato* action was commenced, Israel Re held a reversionary interest in the Trust. By the terms of the Trust and application of New

legal estate, subject only to execution of the trust, and the beneficiary does not take any legal estate in the property but may enforce the trust.
(b) This section does not prevent the creator of a trust from providing to whom the property shall belong in the event of the failure or termination of the trust ...

York law then, the legal estate of the property remaining in the Trust is divided, in unknown amounts, between Bankers Trust and Israel Re. *See Ocana,* 151 B.R. at 673–74.

In much the same vein, in the *Fortunato* action Judge Martin, in granting an attachment of the Trust fund, determined that Israel Re has a remainder interest in the Trust and that that portion of the Trust is property of Israel Re subject to attachment. *Samuel Fortunato v. The Israel Reinsurance Company, Ltd.,* Order of the Court issued July 24, 1992 and modified July 29, 1992, 92 Civ. 3995 (JSM), 1992 WL 188357 (S.D.N.Y. 1992). In fact, in contradistinction to his position in this court, Fortunato argued to Judge Martin that "Israel Re's interest in this trust is far greater than the remainder interest" specified in Judge Martin's modified order of attachment and that the Trust was "attachable property in its entirety." (August 5, 1992 letter to Judge Martin; Ex. C to Reply Memorandum in Support of Petition and Motion for Preliminary Injunction). Judge Martin rejected this argument, contained in a request for reconsideration, adhering to his determination that Israel Re's interest was limited to the remainder.[10]

■ Because Israel Re has a reversionary interest in the Trust (which was conceded by Fortunato at the hearing, although he claimed this interest is valueless) and because no potential beneficiary has perfected its claim against the Trust, for purposes of section 304 the Trust indisputably is "involved in" the Israeli liquidation proceeding.[11] But since Israel Re's interest is limited to the reversion, the value of which is not presently quantifiable,[12] I cannot order turnover of the Trust's corpus. I may, however, enjoin the continuation of the *Fortunato* action pursuant to section 304(b)(1)(A)(i) to permit adjudication in Israel, should I find the provisions of section 304(c) are met and if

such a ruling does not run afoul of the McCarran–Ferguson Act.

Fortunato's remaining contentions regarding the Trust are meritless. He argues that the Trust contemplated the potential insolvency of Israel Re and intended the security provided by the Trust to survive such an event. What the Trust agreement actually contemplated was how the Trust's assets should be disbursed in the event termination of the Trust is brought about by a receiver or other similar party. (Article 2, paragraph Eleventh of the Trust Agreement). But here, termination of the Trust was accomplished by Israel Re itself in 1988.

Additionally, bankruptcy proceedings often negate explicit contract provisions. *See Cunard,* 773 F.2d at 459. In *Cunard,* the contract specifically called for arbitration proceedings in London, but, by granting the debtor's section 304 petition, the court in effect required the creditor to present a claim and litigate in Sweden. *Id.* at 461. Here, the Trust mandates that American Policyholders obtain judgments of a United States court in order to enforce their claims. As in *Cunard,* there is no reason why that provision cannot be overridden so as to spare the Petitioners a multiplicity of suits in different countries and states.

Contrary to Fortunato's argument, the fact that the Trust's sole asset is a letter of credit is irrelevant. What Fortunato has attached is the *proceeds* of the Trust. The letter of credit is merely a substitute for cash, issued by Bank Leumi for the benefit of Bankers Trust. Thus, Bankers Trust is the beneficiary of the letter of credit. Integrity is a beneficiary of the Trust, *not* a beneficiary of the letter of credit.

As Judge Martin concluded, the actual corpus of the Trust is not of concern. Under

---

10. It is not necessary to determine if any estoppel arises from Judge Martin's ruling since I agree with his analysis on the merits.

11. As noted above, Fortunato has already filed a proof of claim, which includes Integrity's claim against the Trust, in the Israeli liquidation proceeding. By his own actions, Fortunato has involved the Trust in the foreign liquidation case, as have numerous other beneficiary/creditors.

12. Although pending claims against the Trust may exceed $2 million, until those claims have been adjudicated, it is impossible to determine the actual value of the reversionary interest. If Israel Re successfully defeats all claims filed against the Trust, the value of the reversion would be the amount of the Trust less expenses.

the terms of the Trust agreement, Israel Re can substitute various types of security, including cash, in lieu of the letter of credit. Whether the Trust is part of the estate does not turn on what happens to constitute its corpus on any given day.

### B. *McCarran–Ferguson*

Fortunato argues that the McCarran–Ferguson Act, 15 U.S.C.A. 1011 *et seq.*, precludes application of section 304 because an injunction would invalidate, impair, or supersede certain laws of New York and New Jersey regulating the business of insurance.

Congress enacted the McCarran–Ferguson Act shortly after the 1944 Supreme Court decision in *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), which held that federal antitrust laws applied to insurance companies. *South–Eastern* reversed the Supreme Court's earlier position that insurance was not commerce, *see Paul v. Virginia*, 75 U.S. (8 Wall) 168, 183, 19 L.Ed. 357 (1869), and created a drastically different regulatory environment for the insurance industry. *See United States Dep't of Treasury v. Fabe*, —— U.S. ——, ——, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449 (1993). Unless insurance companies were immunized from federal antitrust laws, the legality of private ratemaking bureaus, and perhaps other joint activity, appeared doubtful, even though state law regulated much of the activity. Lobbying efforts by both the states and the industry persuaded Congress that some action should be taken, apparently on the assumption that application of the antitrust laws would preclude the states from regulating and taxing insurance and would prohibit ratemaking by the industry. E. Correia, *How to Reform the McCarran–Ferguson Act*, 22 Mem.St. U.L.Rev. 43 (1991). Declaring that "the continued regulation and taxation by the several States of the business of insurance is in the public interest," Congress passed the McCarran–Ferguson Act. *Id.*

The Act provides that:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance....

15 U.S.C.A. § 1012.

■ The McCarran–Ferguson Act "did not purport to make the States supreme in regulating all the activities of insurance companies." *SEC v. National Securities, Inc.*, 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). In the face of valid federal interests, the McCarran–Ferguson Act should be construed narrowly. *See generally SEC v. Republic Nat'l Life Ins. Co.*, 378 F.Supp. 430, 436 (S.D.N.Y.1974). Since "Congress was mainly concerned with the relationship between insurance ratemakers and the antitrust laws, and the power of the States to tax insurance companies," the scope of this Act has been not been expanded by the Supreme Court and lower courts. *National Securities*, 393 U.S. at 458–59, 89 S.Ct. at 568 (McCarran–Ferguson Act did not require preemption of federal securities regulations).

This Circuit has expressly recognized the limitations of the McCarran–Ferguson Act's preemption of federal legislation in *Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054, 1064–65 (2d Cir.1982) (McCarran–Ferguson Act does not preclude application of Title VII), *cert. granted and judgment vacated and remanded on other grounds by* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), *reinstated on other grounds as modified by* 735 F.2d 23 (2d Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); *see Arizona Governing Committee v. Norris*, 463 U.S. 1073, 1087 n. 17, 103 S.Ct. 3492, 3500 n. 17, 77 L.Ed.2d 1236 (1983); *Bernstein v. Centaur Ins. Co.*, 606 F.Supp. 98, 101–02 (S.D.N.Y.1984). The interpretation adopted in this district was described succinctly in *Women in City Government United v. New York*, 515 F.Supp. 295, 303 (S.D.N.Y.1981):

[t]he McCarran–Ferguson Act should not be applied indiscriminately to subsequent federal legislation, the overriding purpose of which is not the regulation of commerce but the protection of other important federal interests, solely because that legislation fails to specifically state that it is applicable in circumstances where insurance interests are implicated.

■■■■ A four-part analysis, specifically derived from the statute's language, has been developed to determine whether a federal statute is inapplicable to given conduct by virtue of the McCarran–Ferguson Act. *Thacker v. New York Life Ins. Co.,* 796 F.Supp. 1338, 1341 (E.D.Cal.1992). The first part of the analysis provides that a federal statute is not precluded by the McCarran–Ferguson Act if the statute specifically relates to the business of insurance within the meaning of 15 U.S.C. § 1012(b). *Cochran v. Paco, Inc.,* 606 F.2d 460, 464 (5th Cir.1979). Second, a federal statute's application will not be precluded by the McCarran–Ferguson Act unless the state has enacted law for the purpose of regulating insurance activities. *See National Securities,* 393 U.S. at 457–59, 89 S.Ct. at 567–68; *see also F.T.C. v. National Casualty Co.,* 357 U.S. 560, 563–65, 78 S.Ct. 1260, 1261–62, 2 L.Ed.2d 1540 (1958). Third, a federal statute's application will only be precluded by the McCarran–Ferguson Act if the activities which brought about the cause of action are the "business of insurance" within the meaning of the MFA. *See National Securities,* 393 U.S. at 459–60, 89 S.Ct. at 568–69; *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 210, 99 S.Ct. 1067, 1072, 59 L.Ed.2d 261 (1979). Finally, application of the federal statute will be precluded only if it would invalidate, impair or supersede the state law regulating insurance. *National Securities,* 393 U.S. at 463, 89 S.Ct. at 570. All four prongs must be satisfied in order to find a federal statute precluded by the McCarran–Ferguson Act. Here, they are not. Specifically, section 304 does not impair, invalidate or supersede the insurance laws of either New York or New Jersey.

The only New York statute which Fortunato contends will be impaired by the granting of the section 304 petition is section 1213 of New York's Insurance Law which is primarily a long-arm statute, derived from the Uniform Unauthorized Insurers Act. The statute addresses the "concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies." *Morgan v. American Risk Management, Inc.,* 1990 WL 106837, *5 (S.D.N.Y. July 20, 1990). The statute requires the unauthorized insurer, before filing a pleading in a court action, to deposit money or file a bond to insure a fund for the payment of any judgment obtained in the action, unless the court dispenses with these requirements upon the insured's obtaining a trust certification from the Superintendent of Insurance. N.Y.Ins.Law § 1213(c)(1)(A) (McKinney 1985). According to the New York Insurance Department, the certification "is a ministerial act and makes no representation as to the sufficiency or availability of trust funds as of the date a final judgment may be entered in the [*Fortunato*] proceeding." Affidavit of Paul Altruda, Acting General Counsel for the New York Insurance Department, sworn to November 18, 1992.

■■■■ Section 1213 is but one small component in the statutory scheme for nondomiciliary insurance companies. Sections 7406 and 7407 of New York Insurance Law provide for the conservation of assets or ancillary liquidation of a foreign or alien insurer. Under certain conditions, section 7407 confers upon the Superintendent of Insurance the right to act as an ancillary receiver in New York. (Although the New York State Superintendent's Office was served with notice of these proceedings, it has chosen not to appear.) In the absence of an ancillary receiver, and notwithstanding section 1213, a claimant must pursue its claim against an insurance company undergoing liquidation in a foreign country or state in that liquidation proceeding. *G.C. Murphy Co. v. Reserve Ins. Co.,* 54 N.Y.2d 69, 444 N.Y.S.2d 592, 596, 429 N.E.2d

111, 114–15 (1981) [13]; *Vlasaty v. Avco Rent–A–Car System, Inc.*, 60 Misc.2d 928, 304 N.Y.S.2d 118, 120 (Sup.Ct.1969). Recognizing that this procedure may appear to be onerous, but is actually essential, one New York court explained that

> [e]xperience has demonstrated that, in order to secure an economical, efficient and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in *Clark v. Williard*, 292 U.S. 112, 123, 54 S.Ct. 615, 620, 78 L.Ed. 1160 (1934).

*Id.* 304 N.Y.S.2d at 121 (citing *Motlow v. Southern Holding & Securities Corp.*, 95 F.2d 721, 725–26 (8th Cir.), *cert. denied*, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938)). New York courts have long required creditors seeking to attach trust funds of foreign insolvent insurers to pursue their claims through the foreign liquidation proceeding. *See, Stoddard v. City Equitable Fire Ins. Co. Ltd. (In re Stoddard)*, 207 A.D. 249, 201 N.Y.S. 808 (1st Dep't 1923), *aff'd*, 238 N.Y. 147, 144 N.E. 484 (1924); *see also Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. 715, 726 (S.D.N.Y.1977) (New York courts have frequently determined that a fund arising from reinsurance treaties must be distributed pro rata among all creditors). This is strong evidence that granting ancillary relief under section 304 does not run afoul of the McCarran–Ferguson Act by abridging New York's regulation of the business of insurance.

 Similarly, under the Uniform Insurers Liquidation Act ("UILA"), adopted by both New York and New Jersey, claims asserted by an insured against an out-of-state liquidator of an insolvent insurer may not be brought in a state other than the state in which the liquidation proceedings were instituted absent the appointment of an ancillary receiver. *Superintendent of Insurance of New York v. International Equipment Leasing, Inc.*, 247 N.J.Super. 119, 125, 588 A.2d 883, *certif. denied*, 126 N.J. 389, 599 A.2d 165 (1991). The UILA was designed to foster "economical, efficient and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors" by a single receiver under the supervision of one court. *Zullo Lumber v. King Constr.*, 146 N.J.Super. 88, 368 A.2d 987 (Law Div. 1976) (plaintiffs in New Jersey cases were obliged to comply with a prior order of the foreign liquidation court enjoining them from prosecuting any action against the insurer other than required filing and litigation in the liquidating court); *accord Chandler v. Omnicare/HMO, Inc.*, 756 F.Supp. 187, 191 (D.N.J.1990); *Ballesteros v. New Jersey Property Liab. Ins. Guar. Ass'n.*, 530 F.Supp. 1367, 1370 (D.N.J.), *aff'd*, 696 F.2d 980 (3d Cir.1982); *In re Mutual Benefit Life Ins. Co.*, 258 N.J.Super. 356, 609 A.2d 768 (N.J.Sup.A.D.1992) ("inequity often results from the fact that creditors in non-domiciliary states may, ... obtain preferences for themselves by commencing attachment or similar proceedings ... There is no just reason for permitting such preferences to prevail"); *In re Integrity Ins. Co.*, 240 N.J.Super. 480, 489, 573 A.2d 928 (A.D.1990). Significantly, under the UILA, trust assets held for the benefit of all policyholders are considered general assets which are distributed pro rata if a liquidation is undertaken under state law. *See* N.Y.Ins.Law §§ 7404, 7406(b) and 7408(a)(7) (McKinney 1985); *In re Union Indemnity Insurance Company*, 132 Misc.2d 102, 502 N.Y.S.2d 907, 909 (Sup. Ct.1986); N.J.S.A. 17B:32–8, 11, 12 and 32–1(g) (1985). Fortunato seeks to achieve not this result, which the Israeli court, too, will give him, but a preference over similarly situated American Policyholders.

---

**13.** The New York Court of Appeals held that the claim asserted in the New York action had to be pursued in the foreign state even though the insured's claim was secured by an undertaking filed pursuant to section 59–a of New York Insurance Law, the predecessor to section 1213.

██ Rather than being contrary to the Bankruptcy Code and section 304, the insurance laws of New York and New Jersey relating to the liquidation of nondomiciliary insolvent insurers are remarkably similar to federal law in their underlying purpose. Indeed, one could quote the judicial opinions explaining the deference to foreign liquidations of insurers and use them to explain why bankruptcy courts defer to foreign insolvency proceedings under section 304. In light of this, the argument that section 304 conflicts with the insurance laws [14] of either state is nothing short of silly. *Cf. In re Oil & Gas Insurance Co.,* 1992 WL 308033, *4 (C.D.Cal. July 31, 1991) (rejecting appellants "imagined conflict" between section 109 and the McCarran–Ferguson Act); *In re Arrow Carrier Corp.,* 154 B.R. 642 (Bankr.D.N.J. 1993). As the McCarran–Ferguson Act exempts from federal law state regulations that regulate the business of insurance only to the extent that the federal law would "invalidate, impair or supersede" state law, based on the above analysis, I conclude that I am not precluded by the Act from granting the relief requested.

## C. *The Merits of the Ancillary Petition*

In determining whether to grant an injunction against the continuation of the *Fortunato* action and the commencement of any others, I am directed to consider the specific criteria set out in section 304(c). Of the six factors, five have relevance here:

1) just treatment of all holders of claims against or interests in such estate;

2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

3) prevention of preferential or fraudulent dispositions of property of such estate;

4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title; [and]

5) comity.

11 U.S.C. § 304(c).

Enjoining further actions against the Trust is consistent with the just treatment of all holders of claims against the Trust. The injunction will prevent the proverbial "race to the courthouse" and will preserve the Trust funds pending a pro rata distribution of its assets to American Policyholders. On the other hand, denial of the injunction will enable at least one creditor to obtain a preferential position in the Trust assets. In precisely the same manner, enjoining the commencement of other actions against the Petitioners, Israel Re or its property will aid the Israeli court in achieving equality for creditors. The guiding premise of the Bankruptcy Code is the equality of distribution of assets among creditors. *Cunard,* 773 F.2d at 459; *Israel–British Bank (London), Ltd. v. Fed. Deposit Ins. Corp.,* 536 F.2d 509, 513 (2d Cir.) ("the road to equity is not a race course for the swiftest"), *cert. denied,* 429 U.S. 978, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976); *see also Banque de Financement, S.A. v. First National Bank,* 568 F.2d 911 (2d Cir. 1977) (mad scramble to the United States courts for immediate attachments was in con-

---

**14.** Fortunato's pre-emption argument, as it relates to New Jersey law, arises solely due to Integrity's own liquidation proceeding. Fortunato does not contend that a specific New Jersey statute would be impaired or invalidated. Instead, he argues that his authority, pursuant to an order of the New Jersey court, to bring actions in any forum to collect assets of Integrity is what is impaired.

However, it is black letter law that the liquidator of an insolvent insurance company steps into the shoes of the insurer, assuming all its rights and subject to all the defenses the insurer was subject to at the time of insolvency. *Bohlinger v. Zanger,* 306 N.Y. 228, 234, 117 N.E.2d 338 (1954). Liquidation orders do not magically change the nature of debts and obligations in the ordinary case. *Kemper Reinsurance Co. v. Cor-*

*coran (In re Midland Ins. Co.)* 167 A.D.2d 75, 80, 569 N.Y.S.2d 951, 954 (1st Dep't 1991), *aff'd,* 79 N.Y.2d 253, 582 N.Y.S.2d 58, 590 N.E.2d 1186 (1992); *accord Goodman v. Goodman,* 15 N.J.Misc. 716, 720–21, 194 A. 866, 869 (N.J.Ch. 1937) ("[b]ecause of the continuing nature of obligations, orders and decrees for their liquidation and enforcement are of but temporary application. They do not create or even modify the obligation, but merely have to do with their enforcement.")

If the petition is granted, Fortunato will not be precluded from seeking recovery from the fund, merely limited to seeking recovery through a channel he first chose to pursue, prior to the commencement of the *Fortunato* action, the Israeli liquidation proceeding.

travention of the established goal of United States and international bankruptcy law to preserve assets for equitable distribution for all creditors wherever located); *In re Culmer*, 25 B.R. 621, 629 (Bankr.S.D.N.Y.1982) (court "not obliged to protect the positions of fast-moving American and foreign attachment creditors over the policy favoring uniform administration in a foreign court"). Had Integrity perfected a claim to the Trust prior to the commencement of Israel Re's liquidation proceeding, Fortunato's plea might have been more weighty, but given that no American Policyholder has done so, the application of the Trust proceeds to all its potential beneficiaries abridges no American policy.

Fortunato argues that because he will have to litigate Integrity's claim in Israel, he will be prejudiced and inconvenienced. As I have remarked before, the prejudice and inconvenience of which Fortunato complains is typical of what every foreign creditor in a sizeable domestic case encounters when forced to litigate its claim in this jurisdiction.

> Moreover, we unhesitatingly require foreign creditors to litigate in our courts if they wish a distribution from a U.S. debtor's estate. It is thus difficult to label as so prejudicial and inconvenient to U.S. creditors as to warrant denial of injunctive relief that which we require of foreign creditors in our own cases. Finally, our courts have not shrunk from vacating attachments, when necessary, and sending the U.S. creditors to the foreign court to litigate their claims in a single forum along with other creditors so long as the claims processing procedure is fundamentally fair.

*Brierley*, 145 B.R. at 163; *see also Kenner Products Co. v. Societe Fonciere et Financiere Agache–Willot*, 532 F.Supp. 478, 479–80 (S.D.N.Y.1982) (the intervention of insolvency proceedings requires a mandatory venue clause to yield to considerations of comity and the interests of all creditors); *In re Gercke*, 122 B.R. 621, 629 (Bankr.D.Dist.Col. 1991) (it is doubtful that under section 304 Congress expected a foreign bankruptcy proceeding to be less prejudicial and inconvenient than a United States action before injunctive relief would be granted).

In addition, Fortunato's own actions undermine his claim of inconvenience since before he instituted the *Fortunato* action, he had already participated in the Israeli liquidation proceeding through the filing of more than $7.5 million in claims. Fortunato thus submitted Integrity to the jurisdiction of that court. This is not so troubling, for "every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes." *Canada Southern R. Co. v. Gebhard*, 109 U.S. 527, 537, 3 S.Ct. 363, 370, 27 L.Ed. 1020 (1883). Under Israeli law, all claims against Israel Re that a creditor might have must be asserted in the proof of debt, and, once asserted in the proof of debt, such claims may not be asserted in any other forum. Plainly, then, the *Fortunato* action was commenced as an end run around the Israeli proceeding.

■ Before I may grant relief under section 304, a comparison between our liquidation scheme and that of the foreign jurisdiction is required. Israel's Companies and Bankruptcy Ordinances are derived from British law. Where a foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, exceptions to the doctrine of comity are narrowly construed. *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 629–30 (2d Cir.1976).

The principles of Israeli bankruptcy law are not dissimilar to those of our Bankruptcy Code. The Israeli liquidation procedures, like our own bankruptcy laws, provide for the orderly and equitable distribution of Israel Re's assets among all of its creditors. The Israeli proceeding is fully supervised by an Israeli court, and the liquidators are required to report to the Official Receiver at least semi-annually, and, in the end, must render a final account to obtain their release. Companies Ordinance §§ 264, 267, 307, 313, 314, 316. *Cf.*, 11 U.S.C. § 704. All transfers, attachments, executions and the like effected after the commencement of the liquidation are deemed void, Companies Ordinance § 268, 269, and preferences and fraudulent

conveyances are subject to avoidance. Companies Ordinance § 355; Bankruptcy Ordinance § 96. *Cf.,* 11 U.S.C. §§ 547–48. Each creditor may prove his claim within 180 days, although the liquidator has the discretion to extend this period for good cause. Companies Ordinance § 353; Companies Regulations 5747–1987, § 53; Bankruptcy Regulations 5745–1985, § 76. A creditor whose claim is rejected must be notified in writing, and the decision is appealable. Companies Ordinance § 93; Bankruptcy Regulations 5745–1985, §§ 93, 96. Funds are distributed under a priority scheme very similar to our own, Companies Ordinance §§ 353, 354; Bankruptcy Ordinance §§ 20, 76; *cf.,* 11 U.S.C. § 507, with no preference being given to the claims of Israeli citizens. *See* Companies Ordinance and Bankruptcy Ordinance Regulations *passim.*

▆▆▆ So long as the laws of the foreign jurisdiction are not repugnant to our own, there is a distinct judicial preference for deferring to the foreign tribunal litigation respecting the validity or the amount of the claims against the foreign debtor. *Brierley,* 145 B.R. at 168; *Gercke,* 122 B.R. at 631. Although more than courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interests of the nation called upon to give it effect. *Cunard,* 773 F.2d at 457 (citing *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972)). The Israeli liquidation proceeding comports with both section 304(c) and the equality of distribution. It is the Israeli court, a single forum, that can best assure an economical and expeditious administration of the Israel Re estate.

Section 304 does not itself mention irreparable injury as a predicate to the issuance of an injunction. Arguably, comity—including considerations of upholding of international duty and convenience—may permit injunc-

tive relief without the showing of irreparable injury to the debtor. *Gercke,* 122 B.R. at 628. But whether or not I may dispense with a finding of irreparable injury is in this context unimportant for "there appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *Lines,* 81 B.R. at 270. *See Victrix,* 825 F.2d 709 (harm to the estate exists in the form of disruption of orderly determination of claims and the fair distribution of assets in a single case).

In light of the foregoing, the relief requested is denied in part and granted in part. The section 304 petition is granted. The attachment in the *Fortunato* action is vacated. The commencement or continuation of all further actions in a U.S. jurisdiction against Israel Re or the Petitioners or to create, perfect or enforce any attachment, lien, judgment or other claim against Israel Re's property are enjoined. The request for turnover of the Trust funds is denied pending the adjudication in Israel and/or resolution of the American Policyholders' claims and subject to further order of this court. SETTLE ORDER consistent with this decision.